963 P.2d 327

**In the Matter of the ESTATE OF Frank F. DOBERT, Deceased.**

**Scott R. DOBERT, Successor Conservator–Appellee,**

v.

**Jacqueline M. DOBERT–KOERNER, Petitioner–Appellant,**

**and**

**Equitable Life Assurance Society of the United States, Appellant.**

**No. 1 CA–CV 97–0153.**

Court of Appeals of Arizona, Division 1, Department D.

March 5, 1998.

Review Denied Sept. 24, 1998.

Bess & Dysart, P.C. by Leon D. Bess, Donald J. Sapala, Phoenix, for Appellant.

Thayer & Thayer, P.C. by Teresa S. Thayer, Phoenix, for Petitioner–Appellant.

Beus, Gilbert & Morrill, P.L.L.C. by K. Layne Morrill, Christine R. Taradash, William D. Cleaveland, Phoenix, for Successor Conservator–Appellee.

## OPINION

EHRLICH, Judge.

¶ 1 In 1995, the Arizona legislature enacted a law which provided that a court order dividing a marital estate serves to rescind any revocable disposition or appointment of property made by a divorced person to that person's former spouse. ARIZ.REV.STAT. ANN. ("A.R.S.") section 14–2804 (1995). This appeal asks us to decide the effect of this statute upon the distribution of life-insurance proceeds to a former spouse, the named beneficiary of an insurance contract entered before the statute was passed. The trial court declared that the statute served to deprive the former spouse of the proceeds. For the reasons which follow, we affirm that judgment.

### FACTS AND PROCEDURAL HISTORY

¶ 2 On August 21, 1992, while Jacqueline M. Dobert–Koerner ("Koerner") and Frank F. Dobert ("Dobert") were married, Equitable Life Assurance Society of the United States ("Equitable") issued a life-insurance policy to Dobert with a face amount of $250,000. Dobert named Koerner the sole beneficiary of the policy, but he retained the contractual right to change the designation. The marriage ended on June 12, 1995. In the dissolution decree, the trial court awarded the policy to Dobert; it then had a cash-surrender value of $700. Between the dates of the policy and the decree, A.R.S. section 14–2804 was passed and became effective. Two months after the decree, Dobert was killed.[1]

¶ 3 Koerner submitted a claim to Equitable for the proceeds of the policy. While her claim was pending, an attorney representing Dobert's mother wrote to a representative of Equitable notifying the company that Dobert and Koerner had divorced and that the divorce served to invalidate the designation of Koerner as the beneficiary in favor of Dobert's estate, of which the minor child of Koerner and Dobert, Scott, was the heir. Equitable requested that the lawyer provide it with a citation to the relevant Arizona authority. When it did not receive that information, Equitable, on November 29, 1995, issued a check to Koerner in the amount of $252,517.12.

¶ 4 At a hearing on February 29, 1996, to appoint a conservator for Scott, Koerner acknowledged that she had received approximately $250,000 in life-insurance benefits. Koerner also testified that she had established a trust for Scott and that she was the trustee. The trial court appointed Koerner the personal representative for the estate and the conservator for Scott. However, in a minute entry dated April 17, 1996, the court advised the parties that it had discovered that $158,000 was missing from the account. It concluded that Scott's interests were not being adequately represented by Koerner or her attorney, and it appointed another attorney to represent the child in future proceedings. Soon thereafter, the court ordered that Koerner be removed as the estate's personal representative and that Fiduciary Services be appointed as the successor.

¶ 5 On August 23, 1996, the trial court granted Equitable's motion to intervene and deposit in a restricted account an amount which reflected the difference between the amount of insurance proceeds paid to Koerner and the balance that remained on deposit. The parties filed a joint motion for declaratory judgment, seeking the court's ruling as to the entitlement to the insurance

---

1. Koerner later was indicted for the murder of Dobert.

proceeds. In a thorough and well-reasoned analysis, the court concluded that Dobert's estate (Scott) is the legal beneficiary of Dobert's life-insurance policy.

## DISCUSSION

¶ 6 When the material facts are undisputed, as these are, we determine whether the trial court correctly applied the substantive law to those facts. *Brink Elec. Constr. Co. v. Arizona Dept. of Revenue*, 184 Ariz. 354, 358, 909 P.2d 421, 425 (App.1995). Questions of law decided by the trial court are reviewed *de novo. Id.*

¶ 7 Koerner and Equitable raise several issues which we reorganize as follow:

1. Whether A.R.S. section 14–2804 applies to life-insurance beneficiary designations;

2. Whether A.R.S. section 14–2804 is unconstitutional because it allegedly impairs the obligations of the life-insurance contract between Dobert and Equitable and violates Koerner's rights to the equal protection of the law; and

3. Whether Equitable received "proper or effective" notice of the statutory revocation of Koerner's status as the beneficiary.

¶ 8 Scott responds with a challenge to Koerner's and Equitable's standing, which issue we address first.

### A. Standing

¶ 9 Koerner and Equitable assert that to apply A.R.S. section 14–2804 to this case is an unconstitutional impairment of their contract. Scott answers that neither Koerner nor Equitable has standing to raise this issue because neither can claim any loss.

¶ 10 Both the Arizona and United States Constitutions guarantee that there shall be no law impairing the obligation of contracts. ARIZ. CONST. art. II, sec. 25; U.S. CONST. art. I, sec. 10, cl. 1. Thus, the threshold issue in a Contracts Clause analysis is "whether the change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 1109, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244,

98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978)). *See also McClead v. Pima County*, 174 Ariz. 348, 359, 849 P.2d 1378, 1389 (App.1992). To have standing to raise the question, all that is necessary is that the party making the assertion "be confronted with some 'threatened or actual injury' from the operation of the statute." *Church v. Rawson Drug & Sundry Co.*, 173 Ariz. 342, 349, 842 P.2d 1355, 1362 (App.1992) (quoting *State v. Herrera*, 121 Ariz. 12, 15, 588 P.2d 305, 308 (1978), *cert. denied*, 441 U.S. 949, 99 S.Ct. 2175, 60 L.Ed.2d 1054 (1979)).

¶ 11 Scott argues that Koerner can claim no injury because she was not a party to the insurance contract and because she had no vested interest in the policy proceeds when A.R.S. section 14–2804 was enacted. We agree that Koerner was not a party to the contract and that she is in no position to argue that Dobert as a contracting party has been constitutionally harmed. *See Herrera*, 121 Ariz. at 15, 588 P.2d at 308 ("In order to possess standing to assert a constitutional challenge, an individual must himself have suffered some threatened or actual injury ...") (citation omitted). We also agree that Koerner can claim no loss of a vested interest in the policy proceeds because no such interest existed either during the marriage or at the time of divorce. *See Doss v. Kalas*, 94 Ariz. 247, 251, 383 P.2d 169, 172 (1963) ("The beneficiary, during the life of the insured, has no vested right which the law protects...."); *McClain v. Beder*, 25 Ariz.App. 231, 232, 542 P.2d 424, 425 (1975) ("[I]f the insured does not change the beneficiary prior to his death, the proceeds of the policy vest in the beneficiary at the time of his death.").

¶ 12 Koerner has an interest in the beneficiary designation nevertheless. When the statute became effective to revoke Dobert's designation of his former wife as the beneficiary of his life-insurance policy, Koerner lost an expectancy interest in the insurance proceeds that was conditioned on factors outside her control. *Cf. Matter of Estate of Schock*, 132 Ariz. 524, 526, 647 P.2d 655, 657 (App.1982) (holding that an *inter vivos* gift of land by a testator to a

devisee created a rebuttable presumption that the gift was a satisfaction of devise; presumption did not create a "vested property right" but rather "at most creates a mere contingency or expectation"). *See also Day v. Clark*, 36 Ariz. 353, 357–58, 285 P. 682, 683–84 (1930) (holding that former wife entitled to challenge her disqualification from receiving benefits pursuant to life-insurance-beneficiary designation since question may be raised by "any interested party"). Because, as Koerner claims, the statute affects her expectancy interest in the insurance proceeds, she has standing to challenge it.

■ ¶ 13 Scott claims that Equitable lacks standing because it has suffered no impairment of its rights and obligations under the insurance contract. However, while the company does lack standing to assert a constitutional·injury to Dobert's rights, underlying Equitable's position is an argument that the statute operates to change its obligation to pay the policy proceeds to the beneficiary designated in the contract and that this change presents the potential for it to have to pay proceeds to Scott after already having paid proceeds to Koerner.

¶ 14 We agree with Equitable that the statute serves to change the identity of the beneficiary to whom it must pay the policy proceeds and that this change raises the specter of loss to Equitable in the form of an obligation in excess of the face value of the policy. Insofar as Equitable may be liable for the proceeds that it cannot recover from Koerner, it has made the requisite showing of an actual or threatened injury necessary to establish its standing to challenge the constitutionality of the statute. *See Church*, 173 Ariz. at 349, 842 P.2d at 1362.

### B. *Application of A.R.S. § 14–2804 to Life-insurance Contract*

¶ 15 The subject of this litigation is the provision of A.R.S. section 14–2804(A), which provides as follows:

A. Except as provided by the express terms of a governing instrument, a court order or contract relating to the division of the marital estate made between a divorced couple before or after the marriage, divorce or annulment, the divorce or annulment of a marriage:

1. Revokes any revocable:

(a) Disposition or appointment of property made by a divorced person to that person's former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced person's former spouse.

¶ 16 Equitable contends that it is unclear whether section 14–2804(A) applies to an insurance contract. We disagree.

■ ¶ 17. The statute in question bears a substantial resemblance to section 2–804 of the Uniform Probate Code. *See* UNIF. PROBATE CODE § 2–804, 8 U.L.A. 212 (Supp. 1997). When a statute is based on a·uniform act, we assume that the legislature "intended to adopt the construction placed on the act by its drafters." *State v. Sanchez*, 174 Ariz. 44, 47, 846 P.2d 857, 860 (App.1993). Thus, commentary to such a uniform act is "highly persuasive unless erroneous or contrary to settled policy in this state." *Id.* The drafters' comment to section 2–804 states that the section covers "life-insurance ... and other revocable dispositions to the former spouse that the divorced individual established before the divorce." 8 U.L.A. at 214. Nothing establishes that the drafters' construction is either erroneous or contrary to settled policy in Arizona. The statute applies to insurance contracts.

### C. *Constitutionality of A.R.S. Section 14–2804(A)*

■ ¶ 18 A statute is presumed to be constitutional, and we will not declare it unconstitutional unless we are convinced that the act conflicts with the federal or state constitution. *Stirewalt v. P.P.G. Indus.*, 138 Ariz. 257, 259, 674 P.2d 320, 322 (App.1983). Koerner and Equitable bear the burden of overcoming that presumption and demonstrating that the statute is unconstitutional. *State v. Cameron*, 185 Ariz. 467, 469, 916 P.2d 1183, 1185 (App.1996). Constitutional claims decided by the trial court are reviewed *de novo. Little v. All Phoenix S.*

*Community Mental Health Ctr.*, 186 Ariz. 97, 101, 919 P.2d 1368, 1372 (App.1995).

### 1. Contracts Clause

¶ 19  Koerner and Equitable claim that the revocation provision of A.R.S. section 14–2804(A) unconstitutionally impairs their rights and obligations when applied retroactively to a life-insurance contract that was executed before the effective date of the statute.. As was said above, the threshold issue is "whether the change in state law has operated as a substantial impairment of a contractual relationship." *General Motors*, 503 U.S. at 186, 112 S.Ct. at 1109.

¶ 20  Koerner fails at this step because she was not a party to the insurance contract; the contract was between Dobert and Equitable.  Any contingent benefit that might have flowed to Koerner was by virtue of Equitable's obligation to Dobert to pay at the time of his death a given amount of money to the beneficiary he designated.  Dobert retained the right to change the beneficiary designation at any time; thus Koerner's interest was only contingent.  The vesting in Koerner of any right to receive the insurance proceeds could not occur unless she survived her former husband and remained the beneficiary named in the con-. tract, both by operation of law and by Dobert's choice.  *See McClain*, 25 Ariz.App. at 232, 542 P.2d at 425.  The fact that Koerner was not a party to the insurance contract, coupled with the absence of any vested right . or obligation owed her, compels the conclusion that Koerner does not have a "contractual relationship" upon which to base her constitutional claim.

2.  Indeed, this is a particularly odd argument given that the attorney for Dobert's mother advised Equitable before its payment of more than $250,000 to Koerner that Arizona law was such as to revoke her son's designation of Koerner as the beneficiary of his life-insurance policy.  It is no response that the attorney failed to give the company's legal department a specific citation.

3.  Both Equitable and Koerner rely heavily on *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir.1991), for the proposition that retroactive application of A.R.S. section 14–2804(A) unconstitutionally violates the Contracts Clause.  The statute in *Whirlpool* was substantially similar to

¶ 21  Even if a contractual relationship were said to exist between Equitable and Koerner because of her contingent interest in the insurance proceeds before divorce, nevertheless, A.R.S. section 14–2804(A) did not effect a substantial impairment to that relationship.  Consideration of the reasonable expectations of the complaining party to the contract plays an important role in determining the substantiality of the contractual impairment.  *Energy Reserves Group v. Kansas Power and Light Co.*, 459 U.S. 400, 416, 103 S.Ct. 697, 707, 74 L.Ed.2d 569 (1983) (reasonable expectations of complaining party not impaired by statute and thus statute did not unconstitutionally violate Contracts Clause, despite fact that parties' obligations had been altered).  Because, in this case, in the dissolution decree, upon the agreement of the parties, the trial court awarded the insurance policy to Dobert, Koerner lacks any reasonable basis for expecting that her beneficiary status would continue.  Thus, her interest in remaining the designated beneficiary was not substantially impaired by the revocation provision of A.R.S. section 14–2804(A) such as would offend the Arizona or United States Constitutions.

¶ 22  We next address Equitable's claim that the statute operates to impair its obligations.  The response is simple: Equitable was obligated to pay the proceeds of Dobert's life-insurance policy to the legal beneficiary.  Any failure on its part to properly ascertain the identity of the beneficiary was not caused by the statute.[2]  Equitable's obligation was not "substantially impaired" by operation of A.R.S. section 14–2804(A).[3]

section 14–2804(A), and the court concluded that the statute unconstitutionally impaired the deceased's right to name his beneficiary under the life-insurance contract.  Even if we agreed with the Eighth Circuit, a decision we need not make (although we observe in passing that, after the divorce, Dobert still could have named anyone he chose, including Koerner, as his beneficiary), as stated earlier, neither Koerner nor Equitable has standing to challenge the constitutionality of a retroactive application of section 14–2804(A) as it applies to Dobert's rights or obligations.  *Whirlpool* is inapplicable.

### 2. Equal Protection

¶ 23 Koerner claims by reference to Equitable's opening brief that A.R.S. section 14–2804 operates to deny her equal protection of the law.[4] She states that the statute singles her out as a former spouse of an insurance policyholder and unconstitutionally treats her disparately from the rest of society in violation of ARIZ. CONST., art. II, sec. 13. We find no such infirmity.

¶ 24 There need only be a rational basis for treating a former spouse differently from other persons with respect to a pre-divorce life-insurance-beneficiary designation. See Church, 173 Ariz. at 350, 842 P.2d at 1363 ("Social and economic legislation that does not involve a suspect classification or a fundamental right will be upheld when it is rationally related to a legitimate government purpose."). The California Court of Appeal interpreted statutes that had a similar revocation provision and described the purpose of the laws as follows:

> The statutes anticipate that, upon undergoing a fundamental change in family composition such as ... divorce ... [the insured] would most likely intend to provide for their new family members, and/or revoke prior provisions made for their ex-spouses. The statutes also anticipate that [the insured] will often fail to so provide and revoke, not out of conscious intent, but simply from a lack of attentiveness. By automatically revoking prior beneficiary-designations upon a change in family composition, and by substituting statutory beneficiaries in their place, [the statutes] are designed to protect [the insured] from such inattentiveness.

Coughlin v. Board of Administration, 152 Cal.App.3d 70, 73, 199 Cal.Rptr. 286 (1984).

¶ 25 We agree with the California court's view, adding that, under Arizona's law, there is no statutory beneficiary substituted. The statute at issue in this case does not foreclose any choice by the insured to designate the former spouse as the beneficiary after their

divorce. The law, therefore, presents a rational means of achieving the social goal of implementing an insured spouse's probable intention in the wake of a divorce.

### D. Equitable's Notice of Revocation

¶ 26 The statute sets forth the notice requirements that must be followed alerting a payor such as Equitable to a claimed revocation of beneficiary status:

> F. Any payor ... is not liable for making a payment or transferring an item of property or any other benefit to a beneficiary designated in a governing instrument affected by a divorce ... or for taking any other action in good faith reliance on the validity of the governing instrument, before the payor ... receives written notice of the divorce.... Any payor ... is liable for a payment made or any other action taken after the payor ... receives written notice of a claimed forfeiture or revocation under this section.
>
> G. Written notice of the divorce ... under subsection F of this section must be mailed to the payor's ... main office or home by certified mail, return receipt requested, or served on the payor ... in the same manner as a summons in a civil action....

A.R.S. § 14–2804.

¶ 27 Equitable argues that it received inadequate notice of the revocation of Koerner's designation as beneficiary. The trial court concluded that any deviation from the technical notice requirements of A.R.S. section 14–2804(G) did not result in prejudice to Equitable in light of the undisputed fact that Equitable received actual notice of the divorce and the claimed revocation.

¶ 28 We need not decide whether Equitable should be charged with having notice of a change in the law in any state in which it does business. In this case, Equitable received a letter from the attorney representing Dobert's mother before it released the insurance proceeds to Koerner. The relevant portion of the letter informed Equitable as follows:

4. Equitable claims that it has standing to challenge the constitutionality of A.R.S. section 14–2804 on equal-protection grounds because it has suffered a pecuniary loss. Although we agree that this argument is persuasive for establishing standing for the Contracts Clause challenge, we find the argument unavailing in terms of establishing standing to challenge the statute on equal protection grounds.

Under applicable Arizona law, the effect of the divorce is to invalidate Jacqueline as the beneficiary of the [life-insurance] policy. Accordingly, it is my belief that the beneficiary of the policy is now Scott Richard Dobert (born 06/06/90), the surviving son and heir at-law of Mr. Dobert.

The purpose of this letter is to alert The Equitable that only a duly Court appointed, qualified and acting Conservator for Scott Richard Dobert is eligible to apply for death benefits under the ... policy.

¶ 29 The attorney sent the letter by regular mail and via facsimile to an Equitable office in Illinois. There is no question that it was received because the letter was forwarded to Equitable's New Jersey office and reviewed by its legal department. Equitable then responded by letter to the attorney, requesting a citation to the "applicable Arizona law." After apparently receiving no response, Equitable without further question distributed the money to Koerner.

¶ 30 As an initial matter, we find spurious Equitable's claim that notice to it was inadequate because the attorney failed to provide it with a specific citation to A.R.S. section 14–2804. The statute does not include such a requirement, nor will we add one.

¶ 31 Equitable received "written notice" of the claimed revocation when it received the letter. Equitable did not, however, receive its notice by certified mail or by civil summons, and it did not receive its notice at its main office. We agree with the trial court, however, that these deviations did not relieve Equitable of its obligation.

¶ 32 This court has articulated the general rule that "one having actual notice is not prejudiced by and may not complain of the failure to receive statutory notice." *Matter of Estate of Ivester*, 168 Ariz. 323, 327, 812 P.2d 1141, 1145 (App.1991). Should the person bearing the obligation of providing notice fail to follow the statutory requirements, that person bears the risk that notice may not be received. In this case, however, before it distributed the proceeds of Dobert's policy, Equitable had written notice of the divorce and that, under Arizona law, Koerner was no longer the beneficiary of the policy. Indeed, Equitable had its legal department review the letter, presumably to determine whether there was any merit to this claim. We agree with the trial court that ["t]here is no evidence ... to show that The Equitable's conduct or handling of this matter would have been any different if it had received the [decree of dissolution] and [the attorney's letter] by certified mail as opposed to first class mail."

¶ 33 We also note that A.R.S. section 14–2804(F) requires that any action taken by the payor be "in good faith reliance on the validity of the governing instrument." It is difficult to understand how Equitable could have acted in good-faith reliance on the validity of the beneficiary designation after having received written notice of its revocation.

¶ 34 Equitable was not prejudiced by receiving notice by first class mail at an office that was not its main office. Its actual notice of the divorce and revocation satisfied the substantive requirements of A.R.S. sections 14–2804(F) and (G).

### CONCLUSION

¶ 35 The judgment is affirmed.

WEISBERG, P.J., and NOYES, J., concur.