5 P.3d 29 (2000)
Joel C. MEARNS and Nanette Mearns, Respondents,
v.
Christine SCHARBACH, formerly known as Christine Mearns, Appellant, and
Guardian Life Insurance Company, Defendant.
No. 18742-0-III.
Court of Appeals of Washington, Division 3, Panel Seven.
July 27, 2000.
*31 Robert E. Lawrence-Berrey, Jr., Finney, Falk & Lawrence-Berrey, Yakima, for Appellant.
Linda A. Sellers, Halverson & Applegate, Yakima, for Respondents.
*30 KURTZ, C.J.
RCW 11.07.010 governs nonprobate assets upon dissolution or invalidation of marriage and revokes beneficiary designations naming the former spouse. This statute operates under the legal fiction that the former spouse, having died at the entry of the decree, does not survive the decedent. In re Estate of Egelhoff, 139 Wash.2d 557, 575, 989 P.2d 80 (1999), cert. granted, __ U.S. ___, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000). Applying RCW 11.07.010, the trial court here granted summary judgment awarding life insurance proceeds to the insured's children, Joel and Nanette Mearns,[1] rather than the insured's former spouse, Christine Scharbach, who was named as the primary beneficiary in the policy. Ms. Scharbach appeals contending: (1) oral evidence is admissible to prove the insured's intent to maintain Ms. *32 Scharbach as primary beneficiary after the divorce; (2) RCW 11.07.010 is unconstitutional when applied to insurance contracts made prior to the statute's enactment; and (3) RCW 11.07.010(2)(b)(ii) renders the automatic revocation provision inapplicable. We conclude RCW 11.07.010 automatically revoked the beneficiary designation naming Ms. Scharbach. We further conclude that Ms. Scharbach lacks standing to assert an unconstitutional impairment of the insured's life insurance contract. We affirm.

FACTS
Christine Scharbach married Jerrold Mearns on March 5, 1982. Mr. Mearns applied for term life insurance in June 1992. The Guardian Life Insurance Company (Guardian) issued a renewable term policy on August 12, 1992. Mr. Mearns was designated as the "Owner" of the policy and the policy named "Christine A. Mearns, wife" as the "Primary Beneficiary." Mr. Mearns's two adult children, Joel C. Mearns and Nanette Mearns,[2] were designated as the contingent beneficiaries. The policy renewed on a yearly basis. If the annual premium was not paid, the policy would lapse within 31 days of the expiration date. Mr. Mearns committed suicide on September 12, 1998, within the policy's grace period.
At the time of his death, Mr. Mearns was single, having divorced Ms. Scharbach on October 17, 1997. The Guardian policy was not mentioned in the decree of dissolution and Mr. Mearns did not change the beneficiary designation on the policy after the divorce. A few weeks after the divorce, Mr. Mearns called his insurance agent and cancelled a $200,000 term policy designating Ms. Scharbach as the primary beneficiary. Mr. Mearns and the agent also discussed the Guardian policy. Mr. Mearns told the insurance agent that he wanted to keep the policy. The agent reminded Mr. Mearns of the recent divorce and asked whether Mr. Mearns wanted to change the primary beneficiary to someone other than Ms. Scharbach. Mr. Mearns responded that he did not wish to make this change and that he wanted to leave the designation the way it was. Mr. Mearns never contacted the agent about changing the designation of the primary beneficiary.
In May 1998, seven months after the divorce, Mr. Mearns changed the beneficiaries on his retirement and life insurance policies held through his employer. He changed the designation from Ms. Scharbach to Joel Mearns and Nanette Mearns. When making these changes, Mr. Mearns told the human resources consultant that he intended to change the beneficiaries from his former wife to his children on some, but not all, of his policies.
Joel Mearns administered his father's estate. Joel and Nanette were designated beneficiaries under their father's two policies through his employer. The Mearns children submitted claims to the Guardian policy even though the policy listed them as contingent beneficiaries. Ms. Scharbach also submitted a claim to Guardian for the proceeds of the policy. The Mearns children filed this action seeking the policy proceeds and Guardian interpleaded the money into court. The Mearns children filed a motion for summary judgment, but agreed to continue the motion to allow for discovery. Ms. Scharbach filed a cross-motion for summary judgment.
The court granted summary judgment in favor of the Mearns children, awarding them the policy proceeds. The court denied Ms. Scharbach's motion for summary judgment and motion for reconsideration. Ms. Scharbach appeals.

ANALYSIS
Does RCW 11.07.010 automatically revoke the beneficiary designation naming Ms. Scharbach?
According to Ms. Scharbach, RCW 11.07.010 is a remedial statute that must be construed in light of its legislative purpose to accomplish the intent of the deceased. Ms. Scharbach contends that Mr. Mearns made statements after the divorce expressing his intent to retain her as the primary beneficiary on the Guardian policy. Ms. Scharbach asserts that the decision to award the policy *33 proceeds to the Mearns children was contrary to Mr. Mearns's intent and the statutory purpose. Additionally, she contends RCW 11.07.010(2)(b)(ii) renders the automatic revocation provision inapplicable because the decree of dissolution required Mr. Mearns to maintain life insurance for her benefit.
The Mearns children contend RCW 11.07.010 automatically revokes beneficiary designations in favor of a former spouse made on life insurance policies obtained prior to the divorce. The Mearns children assert that this beneficiary revocation is automatic and that the oral statements made by Mr. Mearns are inadmissible. The Mearns children also assert that the exception to statutory revocation set forth in RCW 11.07.010(2)(b) is inapplicable.
Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered most favorably to the nonmoving party. Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982). Generally, questions of fact are properly left to the trier of fact; however, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. Trane Co. v. Brown-Johnston, Inc., 48 Wash.App. 511, 513-14, 739 P.2d 737 (1987).
RCW 11.07.010 reads in pertinent part as follows:
(1) This section applies to all nonprobate assets, wherever situated, held at the time of entry by a superior court of this state of a decree of dissolution of marriage or a declaration of invalidity.
(2)(a) If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.
. . . .
(5) As used in this section, "nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under only the following written instruments or arrangements other than the decedent's will:
(a) A payable-on-death provision of a life insurance policy, employee benefit plan, annuity or similar contract, or individual retirement account.
The plain language of the statute provides that beneficiary designations made in favor of a spouse are revoked upon dissolution and that the nonprobate asset passes "as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity." RCW 11.07.010(2)(a).
RCW 11.07.010 was enacted in response to Aetna Life Ins. Co. v. Wadsworth, 102 Wash.2d 652, 689 P.2d 46 (1984). The Wadsworth court concluded that a divorced husband's designation of his former wife as a beneficiary under his insurance policy was valid even though the divorce decree had specifically purported to divest his former wife of an interest in the policy. Id. at 663-64, 689 P.2d 46. This result was criticized as being contrary to what most divorcing couples would want and the Washington State Bar Association recommended the enactment of an automatic revocation provision. House Comm. on Judiciary, Final Bill Rep. SHB 1077, 53d Leg., Reg. Sess. (Wash.1993). RCW 11.07.010 assumes that divorcing couples want to change the beneficiary designations on nonprobate assets as a result of the dissolution of the marriage. Contrary to the assertions of Ms. Scharbach, the statute does not seek to accomplish the intent of the deceased unless that intent is expressed in a manner compatible with the statute.
RCW 11.07.010 was enacted in 1993. RCW 11.07.010(6) provides:
This section is remedial in nature and applies as of July 25, 1993, to decrees of *34 dissolution and declarations of invalidity entered after July 24, 1993, and this section applies as of January 1, 1995, to decrees of dissolution and declarations of invalidity entered before July 25, 1993.
Mr. Mearns obtained the Guardian policy in 1992 and named "Christine A. Mearns, wife," as primary beneficiary. The decree of dissolution was entered on October 17, 1997.
At Mr. Mearns's death, RCW 11.07.010(2)(a) created a legal fiction whereby Ms. Scharbach predeceased him. See In re Estate of Egelhoff, 139 Wash.2d 557, 575, 989 P.2d 80 (1999), cert. granted, __ U.S. ___, 120 S.Ct. 2687, 147 L.Ed.2d 960 (2000). As a result of this legal fiction, Ms. Scharbach's designation as primary beneficiary was revoked and the contingent beneficiaries were entitled to the insurance proceeds. To maintain Ms. Scharbach as primary beneficiary, Mr. Mearns had to redesignate Ms. Scharbach as primary beneficiary after the decree of dissolution was entered. Under RCW 11.07.010(2)(a), Ms. Scharbach cannot recover the policy proceeds because she is no longer a beneficiary under the policy.
Ms. Scharbach asserts that Mr. Mearns's oral statements are sufficient to negate the operation of the statute because the post-divorce designation here need not be in writing. Relying on Waldron v. Home Mut. Ins. Co., 16 Wash. 193, 196, 47 P. 425 (1896), Ms. Scharbach agrees that the requirement of a written designation is appropriate for wills, which must be in writing, but she asserts that this requirement is inappropriate for insurance policies, which can be oral. Stated differently, Ms. Scharbach maintains that the insurance revocation statute does not require that a post-divorce redesignation of a beneficiary must be in writing.
RCW 11.07.010 was patterned after the revocation provisions applicable to wills. In the final bill report for RCW 11.07.010, legislators were informed that under the will revocation statute, RCW 11.12.051, a divorced testator could give a former spouse a gift under his or her will only by executing a new will following the divorce. Of equal importance, legislators were aware that life insurance and other nonprobate assets are widely used as essential parts of estate planning. By enacting RCW 11.07.010, the Legislature adopted a bright-line rulebased on the will revocation provisionto counter the unfortunate result in Wadsworth. This legislative purpose is defeated if courts permit extrinsic oral testimony to negate the operation of the statute. RCW 11.07.010 serves an important function by encouraging divorcing couples to resolve estate planning questions at the time of divorce when other financial matters are being addressed.
Given the intent and operation of the insurance revocation statute, we conclude the redesignation of Ms. Scharbach as the beneficiary had to be in writing. The evidence of oral statements made by Mr. Mearns is insufficient to contradict the operation of the statute. We note that this result is consistent with the Guardian policy, which also requires written changes as to the designation of a beneficiary.
Ms. Scharbach next argues she is entitled to the insurance proceeds because of the statutory exception set forth in RCW 11.07.010(2), which reads as follows:
(b) This subsection does not apply if and to the extent that:
. . . .
(ii) The decree of dissolution or declaration of invalidity requires that the decedent maintain a nonprobate asset for the benefit of a former spouse or children of the marriage, payable on the decedent's death either outright or in trust, and other nonprobate assets of the decedent fulfilling such a requirement for the benefit of the former spouse or children of the marriage do not exist at the decedent's death.
The decree of dissolution permitted one of the parties to purchase the other party's interest in their secondary residence in Creston, Washington. Regarding this property, the decree states that: "After one year either party can initiate a listing to sale [sic] the property. Acceptable terms will be negotiated by the parties and proceeds split equally between the parties. Or, if one party wishes to buy out the other the following terms will apply[.]" Specifically, the buying party would have to execute a promissory note and deed of trust in favor of the selling *35 party. The decree further states that, "During such time as any portion of the note remains unpaid, the party responsible for the note agrees to maintain a life insurance policy with the other party as beneficiary in at least the amount of the outstanding balance on the note."
The statutory exception set forth in RCW 11.07.010(2)(b)(ii) is inapplicable because the Mearns's decree of dissolution does not require that the "decedent maintain a nonprobate asset for the benefit of a former spouse or children of the marriage." Rather, the decree allows one party to purchase the other party's interest in an asset by executing a promissory note, securing the note with a deed of trust on the property, and guaranteeing payment in the event of death by maintaining life insurance. There is no evidence in this record that Mr. Mearns executed a promissory note in favor of Ms. Scharbach for the purpose of purchasing this asset. Consequently, the record does not support Ms. Scharbach's contention that Mr. Mearns was required to maintain a life insurance policy designating her as the beneficiary.
Is RCW 11.07.010 unconstitutional as applied to beneficiary designations made prior to its enactment?
Ms. Scharbach contends that the retroactive application of RCW 11.07.010 unconstitutionally impairs Mr. Mearns's contract with Guardian and that she has standing to raise this constitutional issue because she meets the criteria set forth in Singleton v. Wulff, 428 U.S. 106, 112-18, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). Ms. Scharbach maintains that Mr. Mearns entered into the insurance contract in 1992, naming Christine Mearns (Scharbach) as primary beneficiary and that he was unaware of the enactment of RCW 11.07.010 in 1993. Relying on Whirlpool Corp. v. Ritter, 929 F.2d 1318 (8th Cir. 1991), Ms. Scharbach contends that RCW 11.07.010 substantially impaired Guardian's contractual obligation to Mr. Mearns by disrupting the expectation that the proceeds would go to the named beneficiary.
The Mearns children argue that this constitutional claim cannot be raised for the first time on appeal. They further argue that Ms. Scharbach's constitutional rights have not been harmed because she was not a party to the insurance contract. Relying on In re Estate of Dobert, 192 Ariz. 248, 963 P.2d 327 (1998), the Mearns children contend Ms. Scharbach has no standing to assert the claim that Mr. Mearns's contract rights were impaired by the enactment of RCW 11.07.010. Alternatively, they maintain that RCW 11.07.010 is constitutional as applied to the facts of this case because the precipitating event triggering the application of the statute occurred after the statute's enactment.
A statute is presumed constitutional and the party challenging the statute has the burden of proving its unconstitutionality. State v. Myers, 133 Wash.2d 26, 31, 941 P.2d 1102 (1997).
Both the federal and the state constitution prohibit the impairment of contractual obligations. U.S. CONST. art. I, § 10; CONST. art. I, § 23. The two clauses are substantially similar and are given the same effect. Washington Fed'n of State Employees v. State, 101 Wash.2d 536, 539, 682 P.2d 869 (1984). "The threshold question is `whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 653, 854 P.2d 23 (1993) (quoting Allied Structural Steel Co. v. Spannaus, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). The impairment is substantial if the complaining party relied upon the supplanted part of the contract. Margola Assocs., 121 Wash.2d at 653, 854 P.2d 23. But, legislation impairing contractual obligations may be upheld if the legislation advances a legitimate public purpose. Birkenwald Distrib. Co. v. Heublein, Inc., 55 Wash.App. 1, 9, 776 P.2d 721 (1989). The severity of the impairment increases the level of scrutiny applied to the legislation in question. Spannaus, 438 U.S. at 245, 98 S.Ct. 2716.
Relying on State v. McFarland, 127 Wash.2d 322, 899 P.2d 1251 (1995), the Mearns children contend Ms. Scharbach cannot challenge the constitutionality of RCW 11.07.010 for the first time on appeal. However, *36 a claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). "The defendant must identify a constitutional error and show how ... the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error `manifest', allowing appellate review." McFarland, 127 Wash.2d at 333, 899 P.2d 1251. This inquiry requires a cursory determination as to whether the alleged error in fact suggests a constitutional error and a "plausible showing" by the defendant that the asserted error had practical and identifiable consequences. State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992). Ms. Scharbach has met this burden. However, because this matter involves the proceeds of a life insurance policy, we cannot consider the impairment of contract claim without addressing the issue of standing.
Ms. Scharbach relies primarily on Whirlpool to support her argument that the Washington insurance revocation statute is unconstitutional as applied here. The Whirlpool court held that the Oklahoma insurance revocation statute was an unconstitutional impairment of contracts when applied to insurance contracts entered before the statute became effective. Whirlpool, 929 F.2d at 1324. But the Whirlpool court addressed only the impairment of contract question and did not consider whether the surviving divorced spouse had standing to pursue this claim.
The Mearns children rely upon Dobert. Criticizing Whirlpool, the Dobert court concluded that the divorced wife lacked standing to assert an impairment of contract claim because she was not a party to the contract. The Dobert court also determined that the divorced wife lacked any reasonable basis for expecting that her beneficiary status would continue when the insurance policy was awarded to her ex-husband as part of the dissolution proceeding. Dobert, 192 Ariz. at 253, 963 P.2d 327.
Ms. Scharbach concedes that the constitutional right in question belongs not to her but to Mr. Mearns, who was one of the contracting parties. In other words, she agrees with the Dobert court's conclusion that a surviving divorced spouse has no impairment of contract claim arising out of his or her contingent interest as a beneficiary to an insurance policy. We agree. It is well established that a beneficiary does not acquire a vested right in an insurance policy if the policy owner retains the right to change the beneficiary. Occidental Life Ins. Co. v. Gannon, 57 Wash.2d 868, 870, 360 P.2d 350 (1961).
Acknowledging that she cannot demonstrate an impairment of her contract rights, Ms. Scharbach argues that she has third party standing to assert Mr. Mearns's constitutional claim. In making this argument Ms. Scharbach distinguishes Dobert, arguing that the Dobert court failed to consider whether the divorced spouse had standing to assert the constitutional rights of the deceased spouse. Relying on Singleton and State v. Burch, 65 Wash.App. 828, 830 P.2d 357 (1992), Ms. Scharbach contends she has third party standing to assert Mr. Mearns's constitutional rights.
Ordinarily, a person may not claim standing to challenge a statute in order to vindicate the constitutional rights of third parties. Singleton, 428 U.S. at 114, 96 S.Ct. 2868 (citing Barrows v. Jackson, 346 U.S. 249, 255, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953)); Myers, 133 Wash.2d at 31, 941 P.2d 1102. One exception is when a statute is challenged on overbreadth grounds and involves the First Amendment. Myers, 133 Wash.2d at 31, 941 P.2d 1102. Another exception is recognized with regard to equal protection claims. The Singleton and Burch courts applied the rules of third party standing to permit a litigant to raise equal protection claims of others. Singleton, 428 U.S. at 112-16, 96 S.Ct. 2868; Burch, 65 Wash.App. at 837, 830 P.2d 357.
The third party standing rules require a showing that: (1) the litigant has suffered an injury-in-fact, giving them a sufficiently concrete interest in the outcome of the disputed issue, (2) the litigant has a close relationship to the third party, and that (3) there exists some hindrance to the third party's ability to protect his or her own interests. Burch, 65 Wash.App. at 837, 830 P.2d *37 357 (citing Powers v. Ohio, 499 U.S. 400, 410-11, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)). Even if we assume that Ms. Scharbach can establish an injury, there is a question as to whether she can establish a close relationship to Mr. Mearns's interest or whether the estate is unable to protect these interests.
Ms. Scharbach's designation as a beneficiary in Mr. Mearns's life insurance policy is insufficient to establish a close relationship for purposes of third party standing. Both Singleton and Burch involved equal protection claims where the interests of the excluded class were shared and clearly defined. In Burch, male criminal defendants were permitted to raise equal protection claims on behalf of women who were excluded from a jury because of the State's gender-based use of peremptory challenges. Burch, 65 Wash. App. at 838, 830 P.2d 357. In Singleton, physicians were permitted to assert rights of female patients against governmental interference with their right to abortion. Singleton, 428 U.S. at 118, 96 S.Ct. 2868. Simply stated, the litigants in Burch and Singleton were asserting claims based on shared, clearly defined interests, that were unlikely to change over time.
Here, Mr. Mearns's impairment claim rests on his intent with regard to the designation of Ms. Scharbach as primary beneficiary. Ms. Scharbach's showing of a close relationship consists of evidence related to the amicable nature of the divorce, Mr. Mearns's statements to his insurance agent, and Ms. Scharbach's expectation that she would receive life insurance proceeds upon Mr. Mearns's death. But Mr. Mearns was free to change this designation at any time and may have decided to rely on the operation of RCW 11.07.010.
Taking the evidence in the light most favorable to Ms. Scharbach, we must assume that Mr. Mearns intended to retain Ms. Scharbach as the primary beneficiary when he spoke to the insurance agent shortly after the October 1997 divorce. However, given the enactment of RCW 11.07.010, we cannot assume that Mr. Mearns's intent did not change prior to his death in September 1998. Prior to his death, Mr. Mearns may have learned of the statute and decided not to change the beneficiary designation because there was no need to do so.
We recognize that Mr. Mearns is unavailable to litigate his own interests; however, there is another entity, his estate, empowered to pursue Mr. Mearns's interests. While the estate is unlikely to pursue the litigation here, this fact further demonstrates that Ms. Scharbach's interests may not be identical to those of Mr. Mearns and that Mr. Mearns's interests may have changed with the passage of time.
In sum, Ms. Scharbach's contingent interest in Mr. Mearns's insurance policy is insufficient to establish third party standing. "The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them." Singleton, 428 U.S. at 114, 96 S.Ct. 2868. Ms. Scharbach fails to demonstrate that she has standing to assert Mr. Mearns's impairment of contract claim.

ATTORNEY FEES
This action was brought pursuant to RCW 11.96.070(2) which provides that a person with an interest in or right respecting the administration of a nonprobate asset may have a judicial proceeding for the declaration of rights or legal relations with respect to the nonprobate asset. The Mearns children seek an award of attorney fees from Ms. Scharbach under RCW 11.96.140 which permits a court to exercise its discretion and "order costs, including attorneys' fees, to be paid by any party to the proceedings or out of the assets of the estate or trust or nonprobate asset, as justice may require." Justice does not require that Ms. Scharbach pay the fees of the Mearns children for the privilege of litigating the difficult question presented in this appeal.
Affirmed; deny fees.
SCHULTHEIS, J., and KATO, J., concur.
NOTES
[1] For the purposes of this opinion, we have used the spelling of Ms. Mearns's name that appears in the trial court's caption.
[2] Nanette Mearns is now Nanette Bolyard.