In the Matter of the ESTATE OF Darwin J. BECKER, a/k/a Darwin James Becker, Deceased,

Donna Fasi, f/k/a Donna Becker or Donna Sue Becker, Appellant,

v.

Douglas J. Becker, Personal Representative of the Estate of Darwin J. Becker, a/k/a Darwin James Becker, Deceased, Appellee.

No. 99CA2251.

Colorado Court of Appeals, Div. I.

Dec. 7, 2000.

As Modified on Denial of Rehearing March 8, 2001.

Certiorari Granted Oct. 15, 2001.

Shaver & Licht, John H. Licht, Denver, CO, for Appellant.

Fairfield & Woods, P.C., John M. Tanner, Denver, CO, for Appellee.

Opinion by Judge ROTHENBERG.

Donna Fasi appeals the trial court's order denying her claim as the beneficiary of a life insurance policy and as the personal representative of a will executed by her former husband, Darwin J. Becker (decedent). We affirm.

Decedent and Fasi were married in August 1983. In 1987, they executed life insurance policies covering them both, with decedent naming Fasi as his beneficiary. In 1991, he also executed a will designating her as his personal representative.

In 1993, decedent and Fasi entered into a separation agreement in contemplation of divorce, and they formally dissolved their marriage in February 1994. The parties' separation agreement did not make any disposition of the insurance policy or any mention of rights under the will.

In 1994, the General Assembly enacted § 15–11–804(2), C.R.S.2000, effective July 1, 1995, which provides in relevant part that:

[T]he divorce or annulment of a marriage: (a) Revokes any revocable (i) disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument ... (iii) nomination in a governing instrument nominating a divorced individual's former spouse ... to serve in any fiduciary or representative capacity, including a per-

sonal representative, executor, trustee
. . . .

Decedent died on December 31, 1997. At the time of his death, Fasi was still named as the beneficiary of his insurance policy, and she remained on his will as the personal representative of his estate.

Douglas J. Becker is decedent's brother and the alternate personal representative under the will. Decedent's father is the contingent beneficiary under his life insurance policy. Decedent's father predeceased the decedent, however, and thus decedent's estate became the beneficiary pursuant to the terms of the policy. Decedent's two children from his first marriage are the beneficiaries of his estate.

The trial court concluded that § 15–11–804(2) applied retroactively and revoked Fasi's interests as a matter of law.

## I.

■ Fasi first contends the trial court erred in applying § 15–11–804(2) in the first instance because she claims she was never legally married to the decedent. According to Fasi, their ceremonial marriage was invalid because at the time of their wedding, the decedent was still married to his first wife. We disagree.

On January 4, 1983, the decedent and his first wife attended court to obtain final orders in their dissolution of marriage proceeding. The court signed the dissolution of marriage decree on October 31, 1984, *nunc pro tunc,* January 4, 1983.

The decedent married Fasi after the January 1983 court hearing, but before the signing of the decree in October 1984.

Court orders entered *nunc pro tunc,* or "now for then," are normally for the purpose of correcting an omission from the court records and are deemed to have retroactive effect. *See Perdew v. Perdew,* 99 Colo. 544, 64 P.2d 602 (1936); *Black's Law Dictionary* 1097 (7th ed.1999).

■ Trial courts have discretion to enter *nunc pro tunc* orders in dissolution of marriage actions and such orders may not be

impeached collaterally. *See Diebold v. Diebold,* 79 Colo. 7, 243 P. 630 (1926).

According to Fasi, the *nunc pro tunc* language was ineffective under C.R.C.P. 58(a), which provides in relevant part that:

> [U]pon a decision by the court, the court shall promptly prepare, date, and sign a written judgment .... The effective date of entry of judgment shall be the actual date of the signing of the written judgment.

In *In re the Marriage of Chambers,* 657 P.2d 458 (Colo.App.1982), a panel of this court did apply C.R.C.P. 58(a) as a basis for disregarding the *nunc pro tunc* effect of a dissolution decree between the original parties. However, such ruling was because the effect of the *nunc pro tunc* order there would have operated to time-bar one of the parties from filing a motion for a new trial.

Similarly, *nunc pro tunc* orders have been held ineffective when determining the timing of appeals. *See In re Marriage of Gardella,* 190 Colo. 402, 547 P.2d 928 (1976) (time for appeal of a *nunc pro tunc* order begins from date that order actually entered); *Joslin Dry Goods Co. v. Villa Italia Ltd.,* 35 Colo.App. 252, 539 P.2d 137 (1975)(*nunc pro tunc* effect of order cannot reduce the time or defeat right to seek review).

Apart from these limited circumstances, however, *nunc pro tunc* orders have been regularly enforced in Colorado. *See In re Marriage of Booker,* 811 P.2d 405 (Colo.App. 1990), *rev'd on other grounds,* 833 P.2d 734 (Colo.1992) (*nunc pro tunc* child support order constitutes final judgment under C.R.C.P. 58(a)); *In re Marriage of Rose,* 40 Colo.App. 176, 574 P.2d 112 (1977) (affirming *nunc pro tunc* dissolution order that denied spouse benefits where husband died before order had entered).

Further, the majority of jurisdictions addressing the issue have held that *nunc pro tunc* divorce decrees validate a party's remarriage occurring between the time of the entry of an order dissolving the marriage and the effective date of the decree. *See Malott v. Malott,* 145 Ariz. 587, 703 P.2d 531 (App. 1985); *Van Pelt v. Van Pelt,* 172 A.D.2d 659, 568 N.Y.S.2d 160 (1991); C.P. Jhong, Anno-

tation, *Entering Judgment or Decree of Divorce Nunc Pro Tunc,* 19 A.L.R.3d 648 (2000). We agree with those jurisdictions.

Here, the dissolution of marriage between the decedent and his first wife was finalized on January 4, 1983, except for the determination of child custody. And, unlike the circumstances in *In re Marriage of Chambers, supra,* and *In re Marriage of Gardella, supra,* there was no dispute between the decedent and his first wife concerning the order or the timeliness of filing further motions.

We therefore conclude that the *nunc pro tunc* order had the effect of dissolving decedent's first marriage before his remarriage to Fasi and, therefore, that Fasi was legally married to the decedent until February 1994, when their marriage was dissolved.

## II.

■ Fasi next contends that even if she were legally married to the decedent, § 15–11–804(2) does not apply because their dissolution of marriage occurred before the effective date of the statute. Fasi maintains that the statute must be applied prospectively and that the trial court erred in ruling otherwise. We disagree.

Section 15–17–102(1), C.R.S.2000, provides that:

Except as provided elsewhere in this code and except as provided otherwise in this section, parts 1 to 9 of article 11, as reenacted effective July 1, 1995, *shall apply to the estates, wills, or governing instruments of decedents dying on or after July 1, 1995.* (emphasis added)

■ There is a presumption that statutes are to be applied prospectively. *See* § 2–4–202, C.R.S.2000. Nevertheless, where the plain language of an act shows a clear legislative intent that it be applied retroactively, such language is sufficient to overcome the presumption. *See Ficarra v. Department of Regulatory Agencies,* 849 P.2d 6 (Colo.1993).

Other sections of Title 15 expressly provide for prospective application. *See* § 15–11–601 and § 15–11–701, C.R.S.2000. However, there is no prospective language in § 15–11–804(2), which falls within the parts identified in § 15–17–102(1), C.R.S.2000.

The trial court reasoned that the plain language of the statute operated to make it applicable to estates and documents of persons dying after July 1, 1995, and that since decedent had died on December 31, 1997, it was applicable to the documents at issue. We agree with the trial court that § 15–17–102(1) evidences the General Assembly's clear intent to apply § 15–11–804(2) retroactively under these circumstances.

## III.

Fasi next contends that retroactive application of § 15–11–804(2) by the trial court violates the prohibition against retrospective laws in Colo. Const. art. II, § 11, and also violates the impairments of contracts clause under both the Colorado and United States Constitutions. *See* Colo. Const. art. II, § 2; U.S. Const., art. I, § 10. We are not persuaded.

■ Before addressing the merits of Fasi's contentions, we first consider Becker's assertion that Fasi is procedurally barred from raising the issue of the statute's constitutionality in this appeal because she failed to give notice to the Attorney General under C.A.R. 44(a). We disagree.

The rule provides that:

In a review involving the constitutionality of any Colorado statute in which neither the state nor any state agency nor any representative thereof is a party, the party raising such question shall give immediate notice in writing to the Supreme Court of the existence of the question. The clerk shall thereupon certify such fact to the Attorney General.

The cases on which Becker relies in support of this proposition involved challenges to the facial constitutionality of statutes or ordinances. *See Cuny v. Vail Associates,* 902 P.2d 881 (Colo.App.1995); *Wilson v. Board of County Commissioners,* 703 P.2d 1257 (Colo. 1985).

However, Fasi did not challenge the facial constitutionality of the statute. She maintains that the statute is constitutional and that it applies prospectively. Alternatively,

and in response to Becker's contention and the trial court's ruling that the statute applies retrospectively, she argues that the statute is unconstitutional as applied.

Under these circumstances, we conclude Fasi is not barred from raising the constitutional issues because of her failure to notify the Attorney General under C.A.R. 44(a).

## IV.

■ Turning to the merits, we disagree with Fasi's assertion that retroactive application of § 15–11–804(2) by the trial court violates Colo. Const. art. II, § 11.

In *Ficarra v. Department of Regulatory Agencies, supra,* the supreme court applied a two-step analysis in distinguishing between retroactive and retrospective legislation: (1) whether the General Assembly intended the legislation to be *retroactive, i.e.,* affecting transactions or rights occurring before the legislation's effective date; and, (2) if so, whether the legislation becomes *retrospective,* and therefore unconstitutional as applied.

We concluded earlier, contrary to Fasi's contention, that the General Assembly intended § 15–11–804(2) to apply retroactively. Thus, we need only address whether the legislation is also retrospective.

In *Ficarra v. Department of Regulatory Agencies, supra,* 849 P.2d at 15, the supreme court also explained that retroactive legislation becomes retrospective when the legislation:

> takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, with respect to transactions or consideration already passed.

## A.

According to Fasi, § 15–11–804(2) is retrospective because it "attaches a new disability" to Fasi's separation agreement with decedent. Her argument is that because her separation agreement with decedent did not mention the life insurance proceeds, her ex-

pectancy in those proceeds remained unaltered. We are not persuaded.

In support of her argument, Fasi relies on cases that preceded the passage of the statute. *See Christensen v. Sabad,* 773 P.2d 538 (Colo.1989)(separation agreement does not automatically terminate a spouse's expectancy as named beneficiary of a life insurance policy); and *In re Estate of McEndaffer,* 192 Colo. 431, 560 P.2d 87 (1977)(separation agreement must contain a clear manifestation that the parties intended the spouse's beneficiary expectancy be extinguished). *See also Napper v. Schmeh,* 773 P.2d 531, 537, n. 3 (Colo.1989)(divorce decree alone does not extinguish the expectancy of a beneficiary).

■ However, as the supreme court observed in *Johnson v. New York Life Insurance Co.,* 56 Colo. 178, 182–83, 138 P. 414, 416 (1913), while the beneficiary of an insurance policy has an interest in the policy, it can be defeated "in the manner proscribed in the policy, the charter or by-laws of the company, *or by statute.*" (emphasis added). Here, the statute in question defeats that interest.

■ Colo. Const. art. II, § 11, is satisfied if a statute is not being applied to circumstances that existed prior to its passage, and basic contractual rights are not being affected. *See Carlson v. McCoy,* 193 Colo. 391, 566 P.2d 1073 (1977).

In *Carlson v. McCoy, supra,* a lease agreement was signed between the parties that was silent as to whether the landlord could keep the tenant's security deposit at the expiration of the lease. After the lease was signed, however, a statute became effective which addressed a landlord's willful retention of a security deposit and allowed for treble damages against a landlord for violation of the statute.

After the lease ended, the landlord withheld the tenant's security deposit and the tenant then sued, relying upon the protections afforded by the statute. The landlord defended on the ground that at the time the lease was signed, the statute was not in existence and that the statute therefore affected his rights.

The supreme court upheld application of the statute to the case, concluding that although the lease agreement was signed before the effective date of the statute, the tenant's right to recover the security deposit did not arise until the end of his lease term, which occurred after the statute was passed. *See Carlson v. McCoy, supra.*

Similarly, § 15–11–804(2) addresses the revocation of a decedent's governing instruments—here, the will and the life insurance policy—from an ex-spouse, and the testator's will was revocable throughout his or her lifetime. *See* Restatement (Third) of Property § 4.1 comment a (1999).

Likewise, the designation of the beneficiary in decedent's life insurance policy remained revocable until his death. *See Gorman–English v. Estate of English,* 849 P.2d 840 (Colo.App.1992) (the interest of the named beneficiary to the insurance proceeds is, at most, an expectancy which vests no present property interest in the beneficiary during the lifetime of the insured). The separation agreement was signed before the effective date of § 15–11–804(2), but Fasi's right to recover as the beneficiary of decedent's estate did not arise until his death which occurred after the statute was passed.

Thus, here, as in *Carlson v. McCoy, supra,* the documents in issue were signed by decedent before the effective date of the statute, but any rights Fasi had to recover under the insurance policy and the will that were conferred on her by the separation agreement did not arise until decedent's death which occurred after the statute was passed. And, while Fasi's expectancy as a beneficiary remained unaltered following the separation agreement under case law existing at that time, *see Christensen v. Sabad, supra,* that expectancy did not rise to a tangible circumstance and was not a basic contractual right until decedent's death. *See Gorman–English v. Estate of English, supra.*

*Jefferson County Department of Social Services v. D.A.G.,* 199 Colo. 315, 607 P.2d 1004 (1980), does not require a different result. There, a paternity action was commenced by the Department of Social Services and the child's mother in September 1977 for support of a child born in 1970. The then applicable statute of limitations for such an action was five years which would have barred the plaintiffs' action after September 1975.

However, in July 1977, the statute of limitations was amended to allow such actions up to three years after the child reached majority. The plaintiffs contended that their 1977 action, which concededly had been barred after September 1975 by the earlier statute of limitations, *could be revived* by the 1977 statute.

The supreme court disagreed, concluding that reviving the statute would violate the constitutional prohibition against retrospective legislation. The court explained that where the statute of limitations has run and the bar has attached, "[T]he right to plead it as a defense is a vested right which cannot be taken away or, impaired by subsequent legislation." *Jefferson County Department of Social Services v. D.A.G., supra,* 199 Colo. at 318, 607 P.2d at 1006. The court clarified that the child, who was not a party to the paternity suit, could maintain such an action.

Here, Fasi had only an expectancy until decedent's death in 1997. Because the statute in issue became effective in July 1995, it did not take away a vested right as occurred in *Jefferson County Department of Social Services v. D.A.G., supra.*

Accordingly, we reject Fasi's argument that, as to the separation agreement, § 15–11–804(2) violates the Colorado Constitution's prohibition against retrospective legislation.

### B.

Fasi next contends that § 15–11–804(2) is retrospective in relation to her rights as beneficiary to the insurance policy itself. Again, we disagree.

Other jurisdictions with statutes revoking beneficiary designations to ex-spouses have considered this issue and have reached differing conclusions.

In *Whirlpool Corp. v. Ritter,* 929 F.2d 1318 (8th Cir.1991), the court—interpreting Oklahoma law—held that individuals are entitled to rely on the law governing insurance contracts as it existed when the contracts were

made, and that retroactive application of a statute revoking beneficiary's claim under the policy interfered with this right.

Thereafter, two states resolved the issue in accord with the *Whirlpool* decision, and held that the contractual obligation between decedent and insurer was impermissibly impaired by retroactive application of the statute. *See Aetna Life Insurance Co. v. Schilling,* 67 Ohio St.3d 164, 616 N.E.2d 893 (1993); *Parsonese v. Midland National Insurance Co.,* 550 Pa. 423, 706 A.2d 814 (1998). At the time of those decisions, however, Oklahoma, Ohio, and Pennsylvania had not adopted the Uniform Probate Code.

However, other jurisdictions have focused on whether the named beneficiary had a vested contract right in the policy, and have concluded the beneficiary did not have such a vested right. *See Dobert v. Dobert–Koerner,* 192 Ariz. 248, 963 P.2d 327 (1998)(interpreting Uniform Probate Code provision identical to § 15–11–804); *Mearns v. Scharbach,* 5 P.3d 29 (Wash.App.2000).

Colorado, like Arizona, has adopted the Uniform Probate Code. *See Hall v. Hartley,* 948 P.2d 539 (Colo.1997).

The intent of the drafters to a uniform act is accepted as the General Assembly's intent when it adopts a uniform act, *see Copper Mountain, Inc. v. Poma of America, Inc.,* 890 P.2d 100 (Colo.1995).

The Joint Editorial Board of the Uniform Probate Code drafted the uniform act and has strongly criticized the analysis employed by the court in *Whirlpool Corp. v. Ritter, supra,* as inconsistent with the intent of the Uniform Probate Code. The Board has endorsed the conclusion that there is no impediment to construing the statute retroactively, asserting that:

> The life insurance contract is a third party beneficiary contract. As such, it is a mixture of contract and donative transfer. In [*Whirlpool Corp. v. Ritter, supra,*] and comparable cases, there is never a suggestion that the insurance company can escape paying the policy proceeds that are due under the contract... The divorce statute affects only the donative transfer, the

component of the policy that raises no Contracts Clause issue.

*See JEB Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre–Existing Documents,* 17 *American Coll. Tr. & Est. Couns.* 184 app. II (1991).

We view the Board's statement as to the retroactivity of § 15–804(2) as persuasive, and we also agree with the reasoning of *Dobert* and *Mearns.* We therefore conclude that because Fasi's contingent interest as the beneficiary of decedent's insurance policy gave her only a contract expectancy in that policy, not a vested interest, § 15–11–804(2) may be applied retroactively to the separation agreement, the insurance policy, and the will executed by the decedent without violating the Colorado Constitution's prohibition against retrospective laws. *See Carlson v. McCoy, supra; Ficarra v. Department of Regulatory Agencies, supra.*

In so holding, we acknowledge that another panel of this court has addressed similar facts, and after careful consideration, has reached a contrary conclusion in an opinion announced today. *See In Re Matter of DeWitt,* 32 P.3d 550 (Colo.2000). In this regard, it should be noted that the Colorado Court of Appeals is a statutorily created court, *see* § 13–4–101, C.R.S.2000, and that § 13–4–106(1), mandates that it "shall sit in divisions of three judges each to hear and determine all matters before the court."

Thus, under the statutory scheme, while divisions of this court generally have given considerable deference to the decisions of other panels, one panel is not obligated to follow the precedent established by another. We also have no authority to order a rehearing *en banc. See* C.A.R. 49(a)(3)(stating that review in the Colorado Supreme Court on writ of certiorari is a matter of discretion, but that consideration will be given "[w]here a division of the Court of Appeals has rendered a decision in conflict with the decision of another division of said court ....").

## V.

■ Fasi's final contention is that the retroactive application of § 15–11–804(2) vio-

lates the impairments of contracts clause under both Colo. Const. art. II, § 2, and U.S. Const., art. I, § 10. We disagree.

The prohibition against impairing the obligation of contracts is not to be read literally, but rather its primary focus is upon legislation that repudiates or adjusts pre-existing creditor-debtor relationships. *See Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987); 16B Am.Jur.2d *Constitutional Law* § 713 (1999).

In analyzing whether a statute unconstitutionally impairs a party's contract right, we look at three factors: (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial. *See General Motors Corp. v. Romein*, 503 U.S. 181, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992).

For the reasons expressed earlier, Fasi cannot show a substantial impairment of a contractual relationship with respect to the insurance policy, the will, or the separation agreement. She was not a party to the insurance contract and she concedes she had no vested interest in the policy proceeds or the will. *See Mearns v. Scharbach, supra; Estate of Dobert, supra.* In addition, we have concluded that her right to recover under the separation agreement did not occur until decedent's death, which was after the effective date of § 15–11–804(2).

Hence, the retroactive application of § 15–11–804(2) does not violate the impairments of contracts clause under either the federal or the state constitution.

Order affirmed.

HUME, C.J., and PLANK, J., concur.