[No. 18742-0-III.   Division Three.   November 21, 2000.]

JOEL C. MEARNS, ET AL., *Respondents*, v. CHRISTINE SCHARBACH, *Appellant*.

---

[20] *Alford*, 400 U.S. at 31.

*Robert E. Lawrence-Berrey, Jr.* (of *Finney, Falk & Lawrence-Berrey*), for appellant.

*Linda A. Sellers* (of *Halverson & Applegate, P.S.*), for respondents.

KURTZ, C.J. — RCW 11.07.010 governs nonprobate assets upon dissolution or invalidation of marriage and revokes beneficiary designations naming the former spouse. This statute operates under the legal fiction that the former spouse, having died at the entry of the decree, does not survive the decedent. *In re Estate of Egelhoff*, 139 Wn.2d 557, 575, 989 P.2d 80 (1999), *cert. granted*, 520 U.S. 1242 (2000). Applying RCW 11.07.010, the trial court here granted summary judgment awarding life insurance proceeds to the insured's children, Joel and Nanette Mearns,[1]

---

[1] For the purposes of this opinion, we have used the spelling of Ms. Mearns's

rather than the insured's former spouse, Christine Scharbach, who was named as the primary beneficiary in the policy. Ms. Scharbach appeals contending: (1) oral evidence is admissible to prove the insured's intent to maintain Ms. Scharbach as primary beneficiary after the divorce; (2) RCW 11.07.010 is unconstitutional when applied to insurance contracts made prior to the statute's enactment; and (3) RCW 11.07.010(2)(b)(ii) renders the automatic revocation provision inapplicable. We conclude RCW 11.07.010 automatically revoked the beneficiary designation naming Ms. Scharbach. We further conclude that the operation of RCW 11.07.010 does not unconstitutionally impair Mr. Mearns's contract with Guardian. We affirm.

## FACTS

Christine Scharbach married Jerrold Mearns on March 5, 1982. Mr. Mearns applied for term life insurance in June 1992. The Guardian Life Insurance Company (Guardian) issued a renewable term policy on August 12, 1992. Mr. Mearns was designated as the "Owner" of the policy and the policy named "Christine A. Mearns, wife" as the "Primary Beneficiary." Mr. Mearns's two adult children, Joel C. Mearns and Nanette Mearns,[2] were designated as the contingent beneficiaries. The policy renewed on a yearly basis. If the annual premium was not paid, the policy would lapse within 31 days of the expiration date. Mr. Mearns committed suicide on September 12, 1998, within the policy's grace period.

At the time of his death, Mr. Mearns was single, having divorced Ms. Scharbach on October 17, 1997. The Guardian policy was not mentioned in the decree of dissolution and Mr. Mearns did not change the beneficiary designation on the policy after the divorce. A few weeks after the divorce, Mr. Mearns called his insurance agent and cancelled a $200,000 term policy designating Ms. Scharbach as the

name that appears in the trial court's caption.

[2] Nanette Mearns is now Nanette Bolyard.

primary beneficiary. Mr. Mearns and the agent also discussed the Guardian policy. Mr. Mearns told the insurance agent that he wanted to keep the policy. The agent reminded Mr. Mearns of the recent divorce and asked whether Mr. Mearns wanted to change the primary beneficiary to someone other than Ms. Scharbach. Mr. Mearns responded that he did not wish to make this change and that he wanted to leave the designation the way it was. Mr. Mearns never contacted the agent about changing the designation of the primary beneficiary.

In May 1998, seven months after the divorce, Mr. Mearns changed the beneficiaries on his retirement and life insurance policies held through his employer. He changed the designation from Ms. Scharbach to Joel Mearns and Nanette Mearns. When making these changes, Mr. Mearns told the human resources consultant that he intended to change the beneficiaries from his former wife to his children on some, but not all, of his policies.

Joel Mearns administered his father's estate. Joel and Nanette were designated beneficiaries under their father's two policies through his employer. The Mearns children submitted claims to the Guardian policy even though the policy listed them as contingent beneficiaries. Ms. Scharbach also submitted a claim to Guardian for the proceeds of the policy. The Mearns children filed this action seeking the policy proceeds and Guardian interpleaded the money into court. The Mearns children filed a motion for summary judgment, but agreed to continue the motion to allow for discovery. Ms. Scharbach filed a cross-motion for summary judgment.

The court granted summary judgment in favor of the Mearns children, awarding them the policy proceeds. The court denied Ms. Scharbach's motion for summary judgment and motion for reconsideration. Ms. Scharbach appeals.

## STANDARD OF REVIEW

Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered most favorably to the nonmoving party. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Generally, questions of fact are properly left to the trier of fact; however, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law. *Trane Co. v. Brown-Johnston, Inc.*, 48 Wn. App. 511, 513-14, 739 P.2d 737 (1987).

## ANALYSIS

Does RCW 11.07.010 automatically revoke the beneficiary designation naming Ms. Scharbach?

*Operation of RCW 11.07.010.* RCW 11.07.010 reads in pertinent part as follows:

> (1) This section applies to all nonprobate assets, wherever situated, held at the time of entry by a superior court of this state of a decree of dissolution of marriage or a declaration of invalidity.

> (2)(a) *If a marriage is dissolved or invalidated, a provision made prior to that event that relates to the payment or transfer at death of the decedent's interest in a nonprobate asset in favor of or granting an interest or power to the decedent's former spouse is revoked. A provision affected by this section must be interpreted, and the nonprobate asset affected passes, as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity.*

> . . . .

> (5) As used in this section, "nonprobate asset" means those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under only the

following written instruments or arrangements other than the decedent's will:

(a) A payable-on-death provision of a life insurance policy, employee benefit plan, annuity or similar contract, or individual retirement account[.]

(Emphasis added.)

■ RCW 11.07.010 was enacted in 1993, but its applicability is determined by the date of the decree of dissolution or declaration of invalidity. Specifically, RCW 11.07.010(6) provides:

This section is remedial in nature and applies as of July 25, 1993, to decrees of dissolution and declarations of invalidity entered after July 24, 1993, and this section applies as of January 1, 1995, to decrees of dissolution and declarations of invalidity entered before July 25, 1993.

Mr. Mearns obtained the Guardian policy in 1992 and named "Christine A. Mearns, wife," as primary beneficiary. RCW 11.07.010 is applicable here because the decree of dissolution was entered on October 17, 1997.

■ RCW 11.07.010 provides that beneficiary designations made in favor of a spouse are revoked upon dissolution and that the nonprobate asset passes "as if the former spouse failed to survive the decedent, having died at the time of entry of the decree of dissolution or declaration of invalidity." RCW 11.07.010(2)(a). Hence, at Mr. Mearns's death, RCW 11.07.010(2)(a) created a legal fiction whereby Ms. Scharbach predeceased him. *See In re Estate of Egelhoff*, 139 Wn.2d 557, 575, 989 P.2d 80 (1999), *cert. granted*, 530 U.S. 1242 (2000). As a result of this legal fiction, Ms. Scharbach's designation as primary beneficiary was revoked and the contingent beneficiaries were entitled to the insurance proceeds. Under RCW 11.07.010(2)(a), Ms. Scharbach cannot recover the policy proceeds because she is no longer a beneficiary under the policy. To maintain Ms. Scharbach as primary beneficiary, Mr. Mearns had to re-designate Ms. Scharbach as primary beneficiary after the decree of dissolution was entered.

*Legislative purpose.* Ms. Scharbach contends RCW 11-.07.010 is a remedial statute that must be construed in light of its legislative purpose. Ms. Scharbach maintains that the sole purpose of the statute is to accomplish the deceased's intent. Ms. Scharbach suggests that an automatic revocation occurs only where there is no evidence indicating that the insured wished to retain the former spouse as a beneficiary of the nonprobate asset. In other words, Ms. Scharbach believes the statute is "automatic" in some circumstances but not others. She contends the statute does not apply here because there is evidence indicating that Mr. Mearns wished to retain her as a beneficiary under the policy.

RCW 11.07.010 was enacted in response to *Aetna Life Insurance Co. v. Wadsworth,* 102 Wn.2d 652, 689 P.2d 46 (1984). The *Wadsworth* court concluded that a divorced husband's designation of his former wife as a beneficiary under his insurance policy was valid even though the divorce decree had specifically purported to divest his former wife of an interest in the policy. *Id.* at 663-64. The *Wadsworth* court adopted the following rule:

> To the extent no community property rights are invaded, the named beneficiary will generally be entitled to the proceeds. A dissolution decree will divest the former spouse of his or her expectancy as named beneficiary, however, if (1) the dissolution decree, in clear and specific language, states that the former spouse is to be divested of his or her expectancy as beneficiary *and* (2) the policy owner formally executes this stated intention to change the beneficiary within a reasonable time after the dissolution decree has been entered. Thus, if the insured spouse dies within this reasonable time period without formally executing the previously stated intention to change the beneficiary, the former spouse will not be entitled to the proceeds. After a reasonable time has passed, however, the clause in the dissolution decree will be ineffective and the former spouse, if named beneficiary, will be entitled to the proceeds. In any event, 1 year after dissolution, it shall be conclusively presumed that the policy owner intended to retain the named beneficiary as the one entitled to the proceeds.

*Wadsworth*, 102 Wn.2d at 662-63. Applying this rule, the *Wadsworth* court determined that the former spouse was entitled to the life insurance proceeds because the language in the decree made no mention of the former spouse's expectancy as named beneficiary and over three years had passed between the date of dissolution and the date of the insured's death. *Id.* at 663-64.

The *Wadsworth* rule was adopted to "encourage individuals to consider carefully the disposition of life insurance policies in dissolution" and to "simplify the procedure of determining to whom life insurance proceeds are to be distributed." *Id.* at 663. But the result in *Wadsworth* was criticized as being contrary to what most divorcing couples would want. As a result, the Washington State Bar Association recommended the enactment of an automatic revocation provision. House Comm. on Judiciary, Final Bill Rep. SHB 1077, 53d Leg., Reg. Sess. (Wash. 1993).

Contrary to the assertions of Ms. Scharbach, RCW 11.07.010 does not seek merely to discern the intent of the insured. By adopting RCW 11.07.010, the Legislature sought to accomplish several purposes. First, the Legislature codified the assumption that divorcing couples want to change the beneficiary designations on nonprobate assets upon dissolution or invalidity of their marriage. Of equal importance, the Legislature chose to accomplish this goal by adopting an automatic revocation mechanism patterned after the revocation provisions applicable to wills. By choosing this mechanism, the legislators demonstrated their understanding that life insurance and other nonprobate assets are widely used as essential parts of estate planning and should be treated accordingly. Additionally, the adoption of a bright-line rule triggered by the date of dissolution or invalidation of marriage evinces a legislative intent to encourage couples to resolve estate planning questions when terminating their marital relationship.

In short, RCW 11.07.010 was adopted to achieve several purposes. The statute, as written, does not support Ms. Scharbach's argument that the statutory purpose was

merely to discern the intent of the insured.

■ *Effect of oral statements.* Ms. Scharbach next asserts that Mr. Mearns's oral statements are sufficient to negate the operation of the statute because the post-divorce designation here need not be in writing. Relying on *Waldron v. Home Mut. Ins. Co.*, 16 Wash. 193, 196, 47 P. 425 (1896), Ms. Scharbach agrees that the requirement of a written designation is appropriate for wills, which must be in writing, but she asserts that this requirement is inappropriate for insurance policies, which can be oral. Stated differently, Ms. Scharbach maintains that the insurance revocation statute does not require that a post-divorce redesignation of a former spouse as a beneficiary must be in writing.

In the final bill report for RCW 11.07.010, legislators were informed that under the will revocation statute, RCW 11.12.051, a divorced testator could give a former spouse a gift under his or her will only by executing a new will following the divorce. By enacting RCW 11.07.010, the Legislature adopted a bright-line rule based on the will revocation statute. Acknowledging the importance of nonprobate instruments in estate planning, the Legislature determined that these instruments should be treated like wills. This legislative purpose is defeated if courts permit extrinsic oral testimony to negate the operation of the statute.

Moreover, the adoption of RCW 11.07.010 is also an extension of a portion of the *Wadsworth* rule. Under *Wadsworth*, the former spouse would not be entitled to the proceeds if the insured spouse died within a "reasonable time" after the entry of the dissolution decree without formally executing the previously stated intention to change the beneficiary. *Wadsworth*, 102 Wn.2d at 663.

After considering the intent and operation of the insurance revocation statute, we conclude that any redesignation of Ms. Scharbach as a beneficiary had to be in writing. The evidence of oral statements made by Mr. Mearns is insufficient to contradict the operation of the statute. We note that

this result is consistent with the Guardian policy, which also requires written changes as to the designation of a beneficiary.

*Applicability of statutory exception.* Ms. Scharbach next argues she is entitled to the insurance proceeds because of the statutory exception set forth in RCW 11.07.010(2), which reads as follows:

> (b) This subsection does not apply if and to the extent that:
>
> . . . .
>
> (ii) The decree of dissolution or declaration of invalidity requires that the decedent maintain a nonprobate asset for the benefit of a former spouse or children of the marriage, payable on the decedent's death either outright or in trust, and other nonprobate assets of the decedent fulfilling such a requirement for the benefit of the former spouse or children of the marriage do not exist at the decedent's death[.]

The decree of dissolution permitted one of the parties to purchase the other party's interest in their secondary residence in Creston, Washington. Regarding this property, the decree states that: "After one year either party can initiate a listing to sale [sic] the property. Acceptable terms will be negotiated by the parties and proceeds split equally between the parties. Or, if one party wishes to buy out the other the following terms will apply . . . ." Specifically, the buying party would have to execute a promissory note and deed of trust in favor of the selling party. The decree further states that, "During such time as any portion of the note remains unpaid, the party responsible for the note agrees to maintain a life insurance policy with the other party as beneficiary in at least the amount of the outstanding balance on the note."

■ The statutory exception set forth in RCW 11.07-.010(2)(b)(ii) is inapplicable because the Mearns's decree of dissolution does not require that the "decedent maintain a nonprobate asset for the benefit of a former spouse or children of the marriage." Rather, the decree allows one party to purchase the other party's interest in an asset by

executing a promissory note, securing the note with a deed of trust on the property, and guaranteeing payment in the event of death by maintaining life insurance. There is no evidence in this record that Mr. Mearns executed a promissory note in favor of Ms. Scharbach for the purpose of purchasing this asset. Consequently, the record does not support Ms. Scharbach's contention that Mr. Mearns was required to maintain a life insurance policy designating her as the beneficiary.

Is RCW 11.07.010 unconstitutional as applied to beneficiary designations made prior to its enactment?

Ms. Scharbach contends that the retroactive application of RCW 11.07.010 unconstitutionally impairs Mr. Mearns's contract with Guardian. Ms. Scharbach maintains that Mr. Mearns entered into the insurance contract in 1992, naming Christine Mearns (Scharbach) as primary beneficiary and that he was unaware of the enactment of RCW 11.07.010 in 1993. Relying on *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir. 1991), Ms. Scharbach contends that RCW 11.07.010 substantially impaired Guardian's contractual obligation to Mr. Mearns by disrupting the expectation that the proceeds would go to the named beneficiary.

■ *Issues raised on appeal.* Relying on *State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995), the Mearns children contend Ms. Scharbach cannot challenge the constitutionality of RCW 11.07.010 for the first time on appeal. We disagree. A claim of error may be raised for the first time on appeal if it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3).

*Standing to raise impairment claim.* Ms. Scharbach relies primarily on *Whirlpool* to support her argument that the Washington insurance revocation statute is unconstitutional as applied here. The *Whirlpool* court held that the Oklahoma insurance revocation statute was an unconstitutional impairment of contracts when applied to insurance contracts entered before the statute became effective. *Whirlpool*, 929 F.2d at 1324. But the *Whirlpool* court addressed only the impairment of contract question and did

not consider whether the surviving divorced spouse had standing to pursue this claim.

Relying on *In re Estate of Dobert*, 192 Ariz. 248, 963 P.2d 327 (1998), the Mearns children contend Ms. Scharbach lacks standing to assert the claim that Mr. Mearns's contract rights were impaired by the enactment of RCW 11.07.010. Criticizing *Whirlpool*, the *Dobert* court concluded that the divorced wife lacked standing to assert an impairment of contract claim because she was not a party to the contract. The *Dobert* court also determined that the divorced wife lacked any reasonable basis for expecting that her beneficiary status would continue when the insurance policy was awarded to her ex-husband as part of the dissolution proceeding. *Dobert*, 963 P.2d at 332.

■ Ms. Scharbach concedes that the constitutional right in question belongs not to her but to Mr. Mearns, who was one of the contracting parties. In other words, she agrees with the *Dobert* court's conclusion that a surviving divorced spouse has no impairment of contract claim arising out of his or her contingent interest as a beneficiary to an insurance policy. We agree. It is well established that a beneficiary does not acquire a vested right in an insurance policy if the policy owner retains the right to change the beneficiary. *Occidental Life Ins. Co. v. Gannon*, 57 Wn.2d 868, 870, 360 P.2d 350 (1961).

■ ■ Acknowledging that she cannot demonstrate an impairment of her contract rights, Ms. Scharbach argues that she has third party standing to assert Mr. Mearns's constitutional claim.[3] Ordinarily, a person may not claim standing to challenge a statute in order to vindicate the constitutional rights of third parties. *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (citing *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S. Ct. 1031, 97 L. Ed. 1586 (1953)); *State v. Myers*, 133 Wn.2d 26, 31, 941 P.2d 1102 (1997). However, courts have applied the rules of third

---

[3] In making this argument Ms. Scharbach distinguishes *Dobert*, arguing that the *Dobert* court failed to consider whether the divorced spouse had standing to assert the constitutional rights of the deceased spouse.

party standing to permit a party to assert the rights of others in some circumstances. *Singleton*, 428 U.S. at 112-16; *Myers*, 133 Wn.2d at 31 (First Amendment rights); *State v. Burch*, 65 Wn. App. 828, 837, 830 P.2d 357 (1992) (equal protection claims).

The third party standing rules require a showing that: (1) the litigant has suffered an injury-in-fact, giving them a sufficiently concrete interest in the outcome of the disputed issue, (2) the litigant has a close relationship to the third party, and (3) there exists some hindrance to the third party's ability to protect his or her own interests. *Burch*, 65 Wn. App. at 837 (citing *Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991)). Taking the evidence in the light most favorable to Ms. Scharbach, we must assume that Mr. Mearns intended to retain Ms. Scharbach as the primary beneficiary when he spoke to the insurance agent shortly after the October 1997 divorce. Joel Mearns administered his father's estate; because the Mearns children are contingent beneficiaries under the life insurance policy in question, the estate is unlikely to pursue an impairment of contract claim here. For these reasons, we conclude Ms. Scharbach has standing to assert Mr. Mearns's impairment of contract claim.

*Contract clause analysis.* "A statute is presumed constitutional and the party challenging the statute has the burden of proving its unconstitutionality." *Myers*, 133 Wn.2d at 31.

Both the federal and the state constitution prohibit the impairment of contractual obligations. U.S. Const. art. I, § 10; Const. art. I, § 23. The two clauses are substantially similar and are given the same effect. *Wash. Fed'n of State Employees v. State*, 101 Wn.2d 536, 539, 682 P.2d 869 (1984). "The threshold question is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship.'" *Margola Assocs. v. City of Seattle*, 121 Wn.2d 625, 653, 854 P.2d 23 (1993) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978)). The impairment is

substantial if the complaining party relied upon the supplanted part of the contract. *Margola Assocs.*, 121 Wn.2d at 653. However, legislation impairing contractual obligations may be upheld if the legislation advances a legitimate public purpose. *Birkenwald Distrib. Co. v. Heublein, Inc.*, 55 Wn. App. 1, 9, 776 P.2d 721 (1989). The severity of the impairment increases the level of scrutiny applied to the legislation in question. *Spannaus*, 438 U.S. at 245.

In *Whirlpool*, a former spouse, Darlene Ritter, challenged the constitutionality of the Oklahoma insurance revocation statute. James and Darlene Ritter were married in 1972, and James enrolled in a group life insurance plan in 1985 and named Darlene as his beneficiary. *Whirlpool*, 929 F.2d at 1319. The Oklahoma Legislature passed an insurance revocation provision in 1987. Unlike the Washington statute which was triggered by the date of the entry of the dissolution decree or declaration of invalidity, the Oklahoma provision applied to life insurance contracts of any insured dying after November 1, 1987.[4] James and Darlene divorced in April 1989; three months later James died of a gunshot wound.

Applying the contract clause analysis, the *Whirlpool* court determined that the Oklahoma insurance revocation statute impaired the insured's contract with the insurance company. The *Whirlpool* court further concluded that this impairment was substantial and that the statute, as applied retroactively, was "inappropriate in light of its intended purpose and underlying rationale." *Id.* at 1323.

■ We reach a different conclusion applying the contract clause analysis to the Washington insurance revocation statute. Legislation impairing contractual obligations may be upheld if the legislation advances a legitimate public purpose. *Birkenwald Distrib. Co.*, 55 Wn. App. at 9.

---

[4] Contracts covered included "life insurance contracts, annuities, retirement arrangements, compensation agreements and other contracts designating a beneficiary of any right, property or money in the form of a death benefit." *Whirlpool Corp. v. Ritter*, 929 F.2d 1318, 1320 (8th Cir. 1991). The statute was later amended to apply to any contract of a decedent made after November 1, 1987. *Id.* at 1320 n.2.

The *Whirlpool* court determined that the intent of the Oklahoma statute was to discern the insured's intent after a divorce. The *Whirlpool* court also concluded that no general societal concerns were served by the statute's attempt to anticipate an insured's desire to change beneficiaries after the dissolution of a marriage. *Whirlpool*, 929 F.2d at 1322-23. In other words, the *Whirlpool* court viewed the Oklahoma statute as a new rule for interpreting insurance contracts and concluded that the statute was inappropriate as it would either effectuate or frustrate the insured's intent.

We view the purpose of our statute more broadly and conclude that it serves a legitimate public purpose. The Washington statute was not designed merely to provide guidance for the interpretation of an insured's intent with regard to the designation of a beneficiary in an insurance contract. RCW 11.07.010 serves a legitimate public purpose by applying will revocation principles to nonprobate assets and requiring that these assets be considered in the event of the dissolution or invalidation of a marriage. The Legislature accomplished this purpose by adopting an automatic revocation mechanism and linking the applicability of the statute to the date of the entry of the decree of dissolution or the declaration of invalidity. Comparing the public purposes advanced by RCW 11.07.010 with the level of the impairment to the insured's right to contract, we conclude RCW 11.07.010 is an exercise of legislative power designed to meet a legitimate public purpose.

## ATTORNEY FEES

This action was brought pursuant to former RCW 11.96.070(2) (1997) *repealed by Laws of 1999*, ch. 42, § 637. which provides that a person with an interest in or right respecting the administration of a nonprobate asset may have a judicial proceeding for the declaration of rights or legal relations with respect to the nonprobate asset. The Mearns children seek an award of attorney fees from Ms.

Scharbach under former RCW 11.96.140 (1997) *repealed by Laws of 1999*, ch. 42, § 637 which permits a court to exercise its discretion and "order costs, including attorneys' fees, to be paid by any party to the proceedings or out of the assets of the estate or trust or nonprobate asset, as justice may require." Justice does not require that Ms. Scharbach pay the fees of the Mearns children for the privilege of litigating the difficult question presented in this appeal.

Affirmed.

SCHULTHEIS and KATO, JJ., concur.

Review denied at 143 Wn.2d 1011 (2001).