CHRYSLER CORPORATION,
Plaintiff–Appellant,

v.

KOLOSSO AUTO SALES, INC.,
Defendant–Appellee.

No. 97–3879.

United States Court of Appeals,
Seventh Circuit.

Argued April 24, 1998.

Decided July 23, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied Sept. 18, 1998.

Before POSNER, Chief Judge, and ROVNER and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

A clause in Chrysler's franchise contract with one of its dealers, Kolosso Auto Sales, forbids Kolosso to change the location of the dealership from the address in Appleton, Wisconsin specified in the contract unless it gets Chrysler's written permission. The contract was made in 1988, at a time when the Wisconsin Motor Vehicle Dealers Law, Wis. Stat. § 218.01, did not expressly limit an auto manufacturer's right to include such a provision in a dealership contract. But in 1993 the legislature enacted and made applicable to existing as well as to new contracts an amendment to the Motor Vehicle Dealers Law that entitles a dealer to challenge a manufacturer's refusal to permit him to move his dealership. Wis. Stat. § 218.01(3x). Such a challenge requires the state administrative agency that administers the law to determine whether there is "good cause" for the move. In making this determination the agency may consider any relevant factor including:

a. The reasons for the proposed action.

b. The ... reasons for not approving the proposed action.

c. The degree to which the inability to undertake the proposed action will have a substantial and adverse effect upon the motor vehicle dealer's investment or return on investment.

d. Whether the proposed action is in the public interest.

e. The degree to which the proposed action will interfere with the orderly and profitable distribution of products by the [manufacturer].

f. The impact of the proposed action on other motor vehicle dealers.

Wis. Stat. § 218.01(3x)(c).

In 1995, Kolosso informed Chrysler that it wanted to move the dealership to another address in Appleton in order to enable it to consolidate the service facilities of its Chrysler dealership with the service facilities of a Toyota dealership that it owned at that address. Chrysler refused to authorize the move. Kolosso filed a challenge with the state agency. Chrysler responded with the present suit, which seeks to enjoin Kolosso from moving and to declare section 218.01(3x) invalid under the clause of the U.S. Constitution that forbids a state to impair the obligation of contracts. Art. I, § 10, cl. 1. The district court rejected the constitutional claim and granted summary judgment for the dealer.

■ The administrative proceeding has been stayed pending the outcome of Chrysler's appeal, rather than this appeal being stayed pending the outcome of the administrative procedure. This sequencing does not violate principles of abstention or of exhaustion of remedies. Chrysler claims that forcing it to undergo the ordeal of an administrative proceeding would itself impair its rights under the dealership contract, which gave Chrysler a unilateral, unreviewable right to insist that the dealer stay at the location specified in the contract. Against the cost and uncertainty of the administrative process, the administrative procedure and judicial review of it obviously provide no remedy, so neither abstention nor exhaustion is required. *McCarthy v. Madigan*, 503 U.S. 140, 147, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992); *Planned Parenthood of Dutchess–Ulster, Inc. v. Steinhaus*, 60 F.3d 122, 126 (2d Cir. 1995); *Privitera v. California Board of Medical Quality Assurance*, 926 F.2d 890, 895–96 (9th Cir.1991).

■ If the contracts clause of the Constitution were read literally, Chrysler would win hands down. It had a contract that obligated the dealer to stay put if Chrysler wanted him to, and the state relieved the dealer of the obligation. Not completely, for it was (and is) possible that Chrysler would persuade the agency that administers the dealership law that it has good cause to forbid this dealer to relocate. But as every employer and employee knows, there is a big difference between having a right (to terminate an employee, or in this case to control a

dealer's location) and having a right that depends on showing that there is good cause for its exercise. If the Wisconsin legislature all of a sudden provided that no "at will" contract of employment could be terminated by the employer without good cause, and made the new law applicable to existing employment contracts, this would be a nontrivial impairment of contractual entitlements.

It has been a long time, however, since the contracts clause was interpreted literally. Compare *Ogden v. Saunders,* 25 U.S. (12 Wheat.) 213, 223–24, 6 L.Ed. 606 (1827), and *United States ex rel. Von Hoffman v. Quincy,* 4 Wall. 535, 71 U.S. 535, 550–53, 18 L.Ed. 403 (1866), with *Antoni v. Greenhow,* 107 U.S. 769, 775, 2 S.Ct. 91, 27 L.Ed. 468 (1883), and *Home Building & Loan Ass'n v. Blaisdell,* 290 U.S. 398, 428, 54 S.Ct. 231, 78 L.Ed. 413 (1934). The concern that appears to have animated the progressive relaxation of the clause is that a literal interpretation, like a literal interpretation of other unqualified clauses in the Constitution—notably the free-speech clause, with its flat statement that Congress shall make no law abridging freedom of speech or of the press—might disable government from dealing with emergencies. See *id.* at 425–28, 54 S.Ct. 231. An example is the acute shortage of housing in New York City during World War I, which led the state to enact a law, upheld by the Supreme Court against challenge under the contracts clause, extending residential leases in the City beyond their contractually specified expiration date. *Marcus Brown Holding Co. v. Feldman,* 256 U.S. 170, 41 S.Ct. 465, 65 L.Ed. 877 (1921) (Holmes, J.).

Concern about the paralyzing effect of the literal interpretation may be misplaced, or at least exaggerated. The state in the *Marcus Brown* case could have used its eminent-domain power to extend the leases; and this example shows that the consequences of a literal interpretation of the contracts clause would not be so apocalyptic as those of a literal interpretation of the First Amendment. But they would not be trivial, fiscal issues to one side. The literal interpretation would impede governmental efforts to regulate for the future, by grandfathering economic rights that would give their holders a competitive advantage over new firms. Chrysler is seeking a degree of freedom of action in dealing with its dealers that is denied to automobile manufacturers that having made their dealership contracts after the relocation amendment went into effect cannot seek relief under the contracts clause. We must not exaggerate the benefit to Chrysler, since eventually its contracts will be renegotiated. But neither should we take completely seriously Chrysler's expression of fear that it will lose control over the location of Kolosso's dealership unless the relocation amendment is struck down. Chrysler can pay him to stay in his existing location, and it presumably will do so if the benefit to it exceeds the cost to him. Kolosso wants to move in order to reduce the cost of the repair and other services that he performs and so make more money on those services, even at the cost of fewer car sales because it is not as good a location for selling cars. Chrysler obviously cares more about the car sales. The parties thus have divergent interests, but they can be expected to negotiate to the solution that maximizes the net benefits of their relationship. See R.H. Coase, "The Problem of Social Cost," 3 *J. Law & Econ.* 1 (1960). And likewise in the *Marcus Brown* case, the landlord who had a better use for his property could always pay the existing tenants to leave.

■ But the fact that the parties to a contract can contract around a legal impediment does not dissolve the contracts clause issue. The state has changed the dealership contract to Chrysler's disadvantage. The result will be an added expense to Chrysler— either the loss of car sales by reason of the relocation or the expense of paying Kolosso not to move. But now that the literal interpretation of the contracts clause has been abandoned, the fact that a state makes a contract more costly to one of the parties does not establish a violation.

■ Of great, and we are inclined to say controlling, importance in the determination of whether a law violates the contracts clause is the foreseeability of the law when the original contract was made; for what was foreseeable then will have been taken into account in the negotiations over the terms of

the contract. Assuming that Chrysler knew back in 1988 when it struck its deal with Kolosso that the location clause in the franchise contract would eventually be brought under regulation, it probably insisted on building the expected cost of that eventuality into the price or other terms of the contract. If Chrysler thus was compensated in advance for bearing the burden of the regulation, invalidating the regulation would give Chrysler a windfall. Cf. *Eastern Enterprises v. Apfel*, —— U.S. ——, 118 S.Ct. 2131, 141 L.Ed.2d 451 (1998).

■ The centrality of foreseeability explains the courts' emphasis, in deciding whether the application of a new regulation violates the contracts clause, on the degree to which the activity to which the contract pertains was already heavily regulated when the contract was made. E.g., *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411, 103 S.Ct. 697, 74 L.Ed.2d 569 (1983); *Veix v. Sixth Ward Building & Loan Ass'n*, 310 U.S. 32, 38, 60 S.Ct. 792, 84 L.Ed. 1061 (1940); *Wisconsin Central Ltd. v. Public Service Comm'n*, 95 F.3d 1359, 1371 (7th Cir.1996); *Mercado–Boneta v. Administracion del Fondo de Compensacion al Paciente*, 125 F.3d 9, 13–14 (1st Cir.1997); *Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383 (8th Cir.1994). The automobile dealership relationship has been heavily regulated in Wisconsin as in other states for many years—in Wisconsin for more than sixty years. See Wis. Stat. § 218.01 (1937). But a history of regulation is never a sufficient condition for rejecting a challenge based on the contracts clause. Otherwise Wisconsin could decide to change the price in Chrysler's contracts—which Kolosso concedes the state could not do. *In re Workers' Compensation Refund*, 46 F.3d 813, 820 (8th Cir.1995); *Garris v. Hanover Ins. Co.*, 630 F.2d 1001, 1007 (4th Cir.1980). The fact that some incidents of a commercial activity are heavily regulated does not put the regulated firm on notice that an entirely different scheme of regulation will be imposed. The form and particularly the consequences of such a scheme would be so difficult to foresee that it would be unrealistic to think that the firm had been compensated for the risk of bearing those consequences when it negotiat-

ed the original contract. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 250, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978). Let us not overlook the phrase that ends the well-known passage in Veix—"When he purchased into an enterprise already regulated in the particular to which he now objects, he purchased subject to further legislation upon the same topic." 310 U.S. at 38, 60 S.Ct. 792 (emphasis added; footnote omitted).

Terms like "foreseeability" and "same topic" and "entirely different" are not hard-edged; they call for judgments of degree; and our best judgment is that Chrysler has fallen short of showing a violation. The regulation of which it complains was in the direct path of the plausible (though of course not inevitable) evolution of Wisconsin's program for regulating automobile dealership contracts—for often a law is progressively tightened as experience under its original form discloses gaps—and constituted only a small and predictable step along that path. Long before Chrysler's contract with Kolosso, the auto dealership law had been used to void many standard terms in dealership contracts, notably provisions authorizing the manufacturer to terminate the dealership at will. The statutory language forbidding termination "unfairly, without due regard to the equities or without just provocation" was interpreted to forbid termination without good cause. Wis. Stat. § 218.01(3)(17); *Nagle Motors, Inc. v. Volkswagen North Central Distributor, Inc.*, 51 Wis.2d 413, 187 N.W.2d 374, 385 (1971); *Kuhl Motor Co. v. Ford Motor Co.*, 270 Wis. 488, 71 N.W.2d 420, 426 (1955) (dissent that became the majority opinion on rehearing, *id.* at 428). Although the law did not contain a specific provision dealing with relocation other than one allowing a dealer to complain if another dealer relocated into his area, the law's curtailment of the manufacturer's right of termination cast a cloud over all contractual clauses restricting a dealer's freedom of action, any one of which might be challenged in application as unfair, inequitable, unprovoked, or, in short, as not being based on good cause.

Suppose that before the 1993 amendment Kolosso had moved the dealership without getting Chrysler's permission and in re-

sponse Chrysler had terminated the dealership. Kolosso could have brought suit under the auto dealership law claiming that the termination was without good cause because of exigent circumstances requiring the relocation. Rather than terminating Kolosso, Chrysler might have sought an injunction against the move or damages for the breach of the location clause. Kolosso would have defended against such a suit on the ground that Chrysler was acting in bad faith, an implied defense to all breach of contract suits in Wisconsin. *Bozzacchi v. O'Malley*, 211 Wis.2d 622, 566 N.W.2d 494, 495 (1997); *Foseid v. State Bank*, 197 Wis.2d 772, 541 N.W.2d 203, 212 (1995). The defense might have failed, because the contract provides that Michigan law, under which there is no implied duty of good faith "where parties have 'unmistakably expressed' their respective rights," *Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 877 (5th Cir. 1989) (applying Michigan law), would govern any disputes arising from the contract—and this may be a principle of Wisconsin law as well. See *Wisconsin Natural Gas Co. v. Gabe's Construction Co.*, 220 Wis.2d 14, 582 N.W.2d 118, 120–22 *2 (1998). But the defense might well have succeeded. A Wisconsin court might refuse to enforce the Michigan doctrine as being contrary to a strong public policy of Wisconsin embodied in the Motor Vehicle Dealers Law, *Bush v. National School Studios, Inc.*, 139 Wis.2d 635, 407 N.W.2d 883, 886–87 (1987); *General Medical Corp. v. Kobs*, 179 Wis.2d 422, 507 N.W.2d 381, 384 (1993), and might hold that under Wisconsin law the override principle does not apply to a statutory duty of good faith. We need not decide. Chrysler's legal remedies, whatever precisely they are, could hardly be thought an adequate alternative to the termination that the auto dealership law might, even before the challenged amendment, have blocked. A lawsuit would poison the relationship. To say to Chrysler you may sue your dealer but not terminate him would be like saying to an employer that if one of your employees breaks his contract you may sue him but not fire him. Cf. *McKnight v. General Motors Corp.*, 908 F.2d 104, 115 (7th Cir.1990).

The 1993 amendment in effect regularized a gray area in the dealership law by creating a specific procedure for resolving disputes over dealers' requests to relocate. Before then, as we have said, such disputes were likely to be resolved under a similarly vague substantive standard, only in the context of a termination. The change was thus largely procedural. It was still a real change, and we have no reason to doubt Chrysler's claim that the change hurt it. But it was not a major change—was rather the sort of fine tuning of the statute that Chrysler would have expected to take place from time to time because the statute regulates in such detail a complex commercial relationship. It is true that previous changes in the dealership law had been made prospective only, with the exception of one that Wisconsin's highest court struck down under the contracts clause. *Wipperfurth v. U–Haul Company of Western Wisconsin, Inc.*, 101 Wis.2d 586, 304 N.W.2d 767, 773 (1981). But the Wisconsin legislature had not committed itself to make all future changes prospective—and a rule which said that by making some changes in law prospective a legislature was disabling itself under the contracts clause from making future changes retrospective would encourage retroactive legislation, contrary to the original purpose of the contracts clause. See Douglas Kmiec & John O. McGinnis, "The Contract Clause: A Return to the Original Understanding," 14 *Hastings Const'l L.Q.* 525, 527–28 (1987).

Even big, totally unpredictable impairments of the obligation of contracts can survive challenge under the contracts clause if they are responsive to economic emergencies, *Energy Reserves Group, Inc. v. Kansas Power & Light Co., supra*, 459 U.S. at 411–13, 103 S.Ct. 697; *Home Building & Loan Ass'n v. Blaisdell, supra*, 290 U.S. at 425–28, 54 S.Ct. 231; *Marcus Brown Holding Co. v. Feldman, supra*, 256 U.S. at 197–99, 41 S.Ct. 465, and even to considerably less exigent needs, *Chicago Board of Realtors, Inc. v. City of Chicago*, 819 F.2d 732, 743–44 (7th Cir.1987) (separate majority opinion)—so much less as to impel us in that opinion to describe the contracts clause as having been "defanged." *Id.* at 744. The little, predictable impairments—the ones that take only

small steps along a path that was discernible when the original contract was signed—don't have to be justified at all, because the contract itself, as we have emphasized, is likely to contain terms that compensated contracting parties for the foreseeable risks of their relationship. That "impairments" of this character, not really being impairments, need not be justified is fortunate for the State of Wisconsin, because the justifications that its lawyers have offered for the 1993 amendment are hard to take seriously. Modern automobile dealers are substantial and sophisticated businesses. Kolosso owns two major dealerships. It sells hundreds of motor vehicles every year, not to mention repair and other services, and though its annual revenues are not in the record, they must exceed $10 million. Kolosso is not colossal; it is not on the scale of a Chrysler; but it is (and so far as we can determine was in 1988 as well) big enough to hire a lawyer capable of negotiating a contract that protected its legitimate interests. It gave up something when it agreed not to relocate without Chrysler's consent and no doubt it was compensated elsewhere in the contract for allowing its freedom of action to be restricted in this way. The essence of contract is limiting the freedom of the contracting parties.

But as we have tried to make clear, a contractual obligation is not impaired within the meaning that the modern cases impress upon the Constitution if at the time the contract was made the parties should have foreseen the new regulation challenged under the clause. Should have foreseen it not in detail of course, but sufficiently to have demanded and received compensation. Chrysler should have known in 1988 that it did not have a solid right to prevent a dealer from changing the location of the dealership, that it was operating in a grey area of the dealership law, that the law might some day be amended to regulate disputes over relocation specifically, and that if this happened it might not be able to get the amendment struck down under the contracts clause. And by virtue of these uncertainties, it would not have had to compensate Kolosso generously for the latter's surrendering his freedom to relocate, for the surrender would only have been partial.

And so there was no violation of the contracts clause—at least on the face of the 1993 amendment. The qualification may be significant. We do not know how the procedure set forth in the amendment will operate. The multiple criteria of "good cause," quoted at the outset of this opinion, make the term nondirective. Suppose it turns out that in practice "good cause" means "only if the dealer agrees to stay." Then in practice the restriction on Chrysler's freedom would be greater than we can know today or assume in this opinion, and the change in the regulatory scheme more abrupt and consequential. Maybe Chrysler could then invoke the contracts clause against the application of the amendment with greater success than in the present case. But we have no reason to believe that the Wisconsin courts will read the statute that way, and so the judgment of the district court must be Affirmed.