**ALLSTATE LIFE INSURANCE COMPANY, Plaintiff,**

v.

**Misti HANSON, and Elizabeth Hanson, Defendants.**

No. 01–C–412.

United States District Court, E.D. Wisconsin.

May 3, 2002.

Jeffrey A. Schmeckpeper, for Allstate.

Terence P. Cahill, for Misti Hanson.

Robert J. Wagner, for Elizabeth Hanson.

### *DECISION AND ORDER*

ADELMAN, District Judge.

## I. PROCEDURAL BACKGROUND

This case involves a dispute between Misti Hanson, the former wife of Richard Hanson, now deceased, and Elizabeth Hanson, Richard's mother and only heir. The dispute concerns who is entitled to the benefits of Richard's life insurance policy. Misti is the named beneficiary of the policy, but a recently-enacted Wisconsin statute changed the status of former spouses named as beneficiaries of life insurance policies. The new law creates a presumption that divorce revokes the beneficiary status of former spouses; and it applies retroactively.

The case began when plaintiff Allstate Life Insurance Co. filed an interpleader action in Wisconsin state court naming Misti and Elizabeth as defendants. Misti

is a citizen of Wisconsin, and Elizabeth is a citizen of Illinois. Elizabeth timely removed the case to federal court. Neither Allstate nor Misti objected to removal or moved to remand the case to state court. The case was assigned to the Hon. John W. Reynolds and, when Judge Reynolds died, was randomly reassigned to me. Allstate deposited the benefits under the policy, $509,189.80, with the Clerk of Court and was dismissed as a party.

Misti now moves for summary judgment, asserting that she is entitled to the proceeds of the policy. She argues that the new law presumptively revoking her beneficiary status violates federal and state constitutional provisions prohibiting the enactment of laws that impair the obligation of contract.

## II. SUBJECT MATTER JURISDICTION

Although no party raised the issue, the case raises a question of the court's jurisdiction. Federal courts are obliged to police their own jurisdiction even if neither party challenges it. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999). Further, 28 U.S.C. § 1447(c) requires that, if at any time it appears that a federal court lacks subject matter jurisdiction of a removed case, "the case shall be remanded." Thus, before proceeding further, I must address the jurisdictional issue.

Federal courts are courts of limited jurisdiction. They can adjudicate only those cases that the Constitution and Congress authorize them to adjudicate—generally those involving diversity of citizenship, a federal question, or to which the United States is a party. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). One source of jurisdiction is 28 U.S.C. § 1335, which provides that "district courts shall have original jurisdiction of

any civil action of interpleader" involving more than $500 if "two or more adverse claimants, of diverse citizenship" claim entitlement to the money, and if the plaintiff deposits the money with the court. Under § 1335 plaintiff could have filed an interpleader action in federal court. More than $500 is at stake, plaintiff deposited the money with the court, and the case involves two claimants, Misti and Elizabeth, who are both adverse and diverse. Thus, this court would have had original jurisdiction over the case.

Removal jurisdiction, however, is, in some respects narrower than original jurisdiction. Title 28 U.S.C. § 1441(b) provides that a non-federal question "civil action of which the district courts have original jurisdiction ... shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." The present case is a civil action of which the district courts would have had original jurisdiction. Such jurisdiction was based on § 1335 rather than on the presence of a federal question. Thus, the case was removable under § 1441(b) except for the problem of Misti's citizenship. However, because Misti was properly joined and served as a defendant and was a citizen of Wisconsin, the state in which the action was brought, § 1441(b) barred removal. The rule barring removal in cases where a defendant is a citizen of the forum state is sometimes called the "forum defendant rule," and "is designed to preserve the plaintiff's choice of a (state) forum, under circumstances where it is arguably less urgent to provide a federal forum to prevent prejudice against an out-of-state party." *Hurley v. Motor Coach Indus., Inc.*, 222 F.3d 377, 378–81 (7th Cir.2000). Thus, because of the forum defendant rule, Elizabeth's removal of the case was improper.

Additionally, courts have interpreted 28 U.S.C. § 1441(a), the statute that permits removal by "the defendant or the defendants," to require that all defendants join in the removal petition. *See Speciale v. Seybold*, 147 F.3d 612, 617 n. 4 (7th Cir. 1998) (internal citation omitted); *Doe v. Kerwood*, 969 F.2d 165, 167 (5th Cir.1992). Thus, in the present case the removal procedure was also defective because Elizabeth removed without obtaining the consent of Misti, a co-defendant.

However, neither Allstate nor Misti objected to removal. Neither moved to remand within thirty days as required by 28 U.S.C. § 1447(c), but rather both proceeded to litigate the case in federal court. Thus, the question presented is whether Elizabeth's defective removal was waived. This depends on whether the forum defendant rule and the requirement that all defendants consent to removal are jurisdictional in nature and, thus, nonwaivable, or are defects of a lesser order, hence, waivable. *Hurley*, 222 F.3d at 379 (stating that non-jurisdictional defects in removal are waivable but jurisdictional defects are not). The Seventh Circuit has recently joined the overwhelming majority of other circuits in holding that the forum defendant rule is non-jurisdictional. *Id.* The court based its conclusion in part on the fact that the case could have been filed in federal court in the first place. *Id.* at 380; *see also Korea Exch. Bank v. Trackwise Sales Corp.*, 66 F.3d 46, 50 (3d Cir.1995) ("we conclude ... that an irregularity in removal of a case to federal court is to be considered 'jurisdictional' only if the case could not initially have been filed in federal court.").

As previously stated, the present case could have been properly filed in federal court pursuant to § 1335. Because the forum defendant rule is non-jurisdictional, the failure of a party to object to removal within thirty days constitutes a waiver of the right to have the case remanded to state court. Further, the failure of a removing defendant to file a written consent to removal from a co-defendant is similarly a non-jurisdictional matter. *See Page v. City of Southfield*, 45 F.3d 128, 133 (6th Cir.1995). Such failure is a "defect in removal procedure" within the meaning of § 1447(c). Like the forum defendant rule, it is an irregularity that must be raised by a motion to remand within thirty days after filing the notice of removal, or it is waived. Thus, even though the case was improperly removed from state court, neither of the deficiencies in the removal process was jurisdictional. Both were waivable and waived. Thus, the court has subject matter jurisdiction. Therefore, I will proceed to address Misti's motion for summary judgment.

## III. FACTUAL BACKGROUND

Misti and Richard married in 1989 and each purchased a $500,000 Allstate life insurance policy naming each other as beneficiary but reserving the power to change the beneficiary designation. In 1997, Misti and Richard divorced. The marital settlement agreement stated that "[n]either party shall be obligated to maintain life insurance for the benefit of the other party," (R. 18 Ex. D at 4) and awarded each party the life insurance policy in his or her own name. In addition, the agreement stated "each party shall be divested of and each party waives, renounces, and gives up ... all right, title, and interest in and to property awarded to the other. All property and money received and retained by the parties shall be the separate property of the respective parties, free and clear of any right, title, interest or claim of the other party." (*Id.* at 8.) Nothing in the agreement or decree expressly changed the beneficiaries in Misti's and Richard's life insurance policies, and Misti and Rich-

ard did not expressly change the beneficiaries later.

When Misti and Richard purchased the policies and when they divorced, Wisconsin law presumptively treated each divorced spouse as having pre-deceased the other for purposes of awarding probate assets at death. Wis. Stat. § 853.11(3) (1991), *amended by* Wis. Stat. § 854.15 (1998); *see also* Howard S. Erlanger, *Wisconsin's New Probate Code*, 71 Wis. Lawyer 6, 48 (Oct.1998). However, nonprobate assets, such as life insurance policies, were treated differently. *See Bersch v. VanKleeck*, 112 Wis.2d 594, 599, 334 N.W.2d 114 (1983). When spouses who had named each other as beneficiaries in life insurance policies divorced, the former spouse remained the presumed beneficiary unless the divorce decree "unequivocally and explicitly" divested the spouse of that interest, and the parties notified the insurance company of the change. *Id.*

In 1998, the Wisconsin Legislature revised the state probate code bringing it into closer alignment with the Uniform Probate Code. Erlanger, *Wisconsin's New Probate Code*, 71 Wis. Lawyer at 6–7. The new provision states that divorce "[r]evokes any revocable disposition of property made by the decedent to the former spouse or a relative of the former spouse in a governing instrument." Wis. Stat. § 854.15(3)(a). The effect of this change was to apply the presumption previously applicable to the probate assets of divorcing spouses to nonprobate assets and pre-

sumptively treat each divorced spouse as having pre-deceased the other. Thus, under the present law, divorce presumptively revokes the beneficiary spouse's interest in a life insurance policy. The beneficiary spouse can rebut the presumption by showing that the parties expressly agreed otherwise or by offering extrinsic evidence of the decedent's intent. *Id.* § 854.15(5).[1] The legislature also applied the 1998 revisions retroactively. *Id.* § 861.21; *see also* Erlanger, *Wisconsin's New Probate Code*, 71 Wis. Lawyer at 49.

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis deleted). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a disputed matter that "might affect the outcome of the suit." *Id.*

---

1. Wis. Stat. § 854.15(5) states that divorce does not revoke a former spouse's beneficiary interest if,

  (a) The express terms of a governing instrument provide otherwise.

  (b) The express terms of a court order provide otherwise.

  (c) The express terms of a contract relating to the division of the decedent's and former spouse's property made between the decedent and the former spouse before or

after the marriage or the divorce, annulment or similar event provide otherwise.

  (d) The divorce, annulment or similar event is nullified.

  (e) The decedent and the former spouse have remarried.

  (f) There is a finding of the decedent's contrary intent. Extrinsic evidence may be used to construe that intent.

*Id.* § 854.15(5).

The moving party bears the initial burden of demonstrating that it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party seeks summary judgment on the ground that there is an absence of evidence to support the non-moving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325, 106 S.Ct. 2548. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 322–23, 106 S.Ct. 2548. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir.1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, it is "not required to draw every conceivable inference from the record—only those inferences that are reasonable." *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

## V. DISCUSSION

"[T]he laws which subsist at the time and place of the making of a contract ... enter into and form a part of it." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 188, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quotation marks and citations omitted). Thus, at the time of the divorce Misti retained her interest as the beneficiary of Richard's policy. *See Bersch*, 112 Wis.2d at 599, 334 N.W.2d 114. However, § 854.15(3)(a) presumptively revokes her interest. The question presented is whether retroactive application of § 854.15(3)(a) violates the Contract Clauses of the federal and Wisconsin constitutions. Misti argues that it does.

### A. Applicable Law

The United States Constitution prohibits a state from passing "any ... law impairing the Obligation of Contract," U.S. Const. art. I, § 10, cl. 1; and the Wisconsin Constitution provides that the state shall make "[n]o ... law impairing the obligation of contracts," Wis. Const. art. I, § 12. In interpreting the state provision, Wisconsin courts have followed interpretations of the federal provision. *See Chappy v. LIRC*, 136 Wis.2d 172, 186, 401 N.W.2d 568 (1987); *Reserve Life Ins. v. La Follette*, 108 Wis.2d 637, 644–45, 323 N.W.2d 173 (Ct.App.1982). Thus, I look to cases interpreting the federal clause to address both Misti's federal and state constitutional claims.

The Contract Clause is "designed to ... protect vested [contractual] rights from [legislative] invasion." *City of New Orleans v. Clark*, 95 U.S. 644, 655, 24 L.Ed. 521 (1877). However, the clause is not interpreted literally. *Chrysler Corp. v. Kolosso Auto Sales, Inc.*, 148 F.3d 892, 894 (7th Cir.1998). Rather, "the Supreme Court has relied upon [it] mainly to limit the ability of states to modify ... contracts to which a state is a party." *Wis. Central Ltd. v. Public Serv. Comm'n of Wis.*, 95 F.3d 1359, 1370 (7th Cir.1996). However, on occasion the Court has applied the clause to legislation that alters private contracts as well. *See, e.g., Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978).

A party raising a challenge under the Contract Clause must show that she has (1) a contractual relationship, (2) an impairment in that relationship, and (3) that the level of impairment is "substan-

tial." *Gen. Motors Corp.,* 503 U.S. at 186, 112 S.Ct. 1105; *Khan v. Gallitano,* 180 F.3d 829, 832 (7th Cir.1999). To establish a contractual relationship subject to the Contract Clause, the party must demonstrate that the contract gave her a vested interest, not merely an expectation. *See Dodge v. Bd. of Educ.,* 302 U.S. 74, 77–78, 58 S.Ct. 98, 82 L.Ed. 57 (1937); *Larsen v. Senate,* 154 F.3d 82, 89–90 (3d Cir.1998); *see also Ace Cycle World, Inc. v. Am. Honda Motor Co., Inc.,* 788 F.2d 1225, 1228 (7th 1986).

■ To prove a substantial impairment, a party must show that the law disrupts the parties' expectations. *Allied Structural Steel,* 438 U.S. at 245, 98 S.Ct. 2716; *Chrysler,* 148 F.3d at 894. Thus, the court must consider what the parties intended and whether the challenged law was foreseeable, or at least "in the direct path of the plausible" when the original contract was made. *Chrysler,* 148 F.3d at 894. If the area of economic activity covered by the contract is highly regulated, then new legislative changes are more likely foreseeable than if the challenged law marks the state's first foray into the area. *Id.* at 895. However, the mere existence of heavy regulation cannot put a party "on notice that an entirely different scheme of regulation will be imposed." *Id.* Thus, in *Chrysler,* the Seventh Circuit upheld a new law permitting car dealerships to challenge manufacturers' refusals to let them relocate because the field was heavily regulated and already limited the extent to which manufacturers could control their dealers. *Id.* at 895. Further limiting manufacturer control was foreseeable and, therefore, did not substantially impair a dealer-manufacturer contract prohibiting the dealer from challenging a refusal. *Id.*

Finding a substantial impairment in a contractual relationship does not end the inquiry. Notwithstanding such a conclusion, a court should uphold a challenged statute if it "reasonabl[y] and appropriate[ly]" serves "a significant and legitimate public purpose" when balanced against the severity of the impairment. *Chi. Bd. of Realtors, Inc. v. City of Chi.,* 819 F.2d 732, 736 (7th Cir.1987). "[T]he Supreme Court has suggested that a sort of sliding scale is appropriate [whereby] ... the level of scrutiny given a law varies directly in accordance with the severity of the impairment of existing contracts, and varies inversely in accordance with the degree of prior regulation in a particular field of activity." *Id.* (internal citations omitted).

In addition, when the state is not itself a party to the contract, " 'courts [should] ... defer to legislative judgment as to the necessity and reasonableness of a particular measure,' " even if the new law imposes a financial hardship on private parties. *Id.* at 737 (quoting *United State Trust Co. v. N.J.,* 431 U.S. 1, 22–23, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977)). Thus, in *Chicago Board of Realtors,* the Seventh Circuit gave deference to the city's determination that limiting penalties for late rental payments to ten dollars promoted public health and welfare and upheld a law imposing a ten dollar cap despite the fact that it would cost landlords an estimated $4 million. *Id.* at 736–37; *see also Keystone Bituminous Coal Ass'n v. DeBenedictis,* 480 U.S. 470, 504–506, 107 S.Ct. 1232, 94 L.Ed.2d 472 (1987) (upholding law preventing companies from mining fifty percent of subsurface coal to preserve structural support of land despite private surface damage waivers obtained by mining companies with mining rights).

The Seventh Circuit has not addressed the question of whether retroactive application of laws revoking a former spouse's beneficiary interest in a life insurance policy violates the Contract Clause. Courts in other jurisdictions have split over this issue. *Compare Estate of Dobert v. Dobert–*

*Koerner,* 192 Ariz. 248, 963 P.2d 327, 332 (Ct.App.1998) (finding no violation) *and Estate of Becker v. Becker,* 32 P.3d 557, 564 (Colo.Ct.App.2001) *and Mearns v. Scharbach,* 103 Wash.App. 498, 12 P.3d 1048, 1054–56 (2000) *with Whirlpool Corp. v. Ritter,* 929 F.2d 1318, 1322–23 (8th Cir. 1991) (finding a violation) *and First Nat'l Bank & Trust v. Coppin,* 827 P.2d 180, 182 (Okla.Ct.App.1992) (interpreting same statute as *Whirlpool* and following *Whirlpool* as binding precedent) *and Parsonese v. Midland Nat'l Ins. Co.,* 550 Pa. 423, 706 A.2d 814, 818–19 (1998).

The Joint Editorial Board for the Uniform Commercial Code has weighed-in on this issue, expressing its disapproval of *Whirlpool,* 929 F.2d 1318, the leading case finding a Contract Clause violation. Edward C. Halbach, Jr. and Lawrence W. Waggoner, *The UPC's New Survivorship and Antilapse Provisions,* 55 Alb. L.Rev. 1091, 1129–30 (1992) (citing *Joint Editorial Board Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre–Existing Documents,* 17 American College of Trust and Estates Counsel Notes 161, 184–85 (1991)). The Board found the decision inconsistent with the nature of life insurance policies, which give the beneficiary no contractual rights, and inconsistent with Supreme Court precedent which, among other things, has never applied the Contract Clause to invalidate laws that merely set default rules or dictate methods of construction. *Id.*

The drafters of the Wisconsin provision agreed with the Joint Editorial Board's assessment and rejected *Whirlpool.* Erlanger, *Wisconsin's New Probate Code,* 71 Wis. Lawyer at 49. Others have also distinguished or criticized *Whirlpool* based on the beneficiary's lack contractual rights under a life insurance policy. *See Estate of Dobert,* 963 P.2d at 332 n. 3 (distinguishing *Whirlpool* ); J. Rodney Johnson, *Wills, Trusts and Estates,* 27 U. Rich. L.Rev. 833, 845 (1993) (calling *Whirlpool* "poorly reasoned").

As will be evident from my analysis, I also disagree with *Whirlpool.* I now apply the foregoing legal principles to the facts of the present case.

## B. Application of Law to Facts

### 1. Substantial Impairment of Contractual Relationship

#### a. Misti's Contractual Rights

First, I determine whether Misti had a contractual relationship, and, if so, whether it was substantially impaired by § 854.15(3)(a). As stated, to show that she had a contractual relationship subject to the Contract Clause, Misti must demonstrate that as a result of the relationship she had a vested interest. *See Dodge,* 302 U.S. at 77–78, 58 S.Ct. 98; *Larsen,* 154 F.3d at 89–90. Her claim fails because she cannot make such a showing. In the insurance policy itself and in the divorce settlement agreement, Richard expressly reserved the right to change the beneficiary; thus, Misti only had a "revocable expectancy contingent upon being the beneficiary at the time of [Richard's] death." *See* 4 Lee R. Russ, et al. *Couch on Insurance* § 58.14 at 18 (3d ed.1997); *see also* 16 Richard A. Lord *Williston on Contracts* § 49.5 at 27 (4th ed.2000) (life insurance "beneficiary has mere expectancy," not a vested interest).

Further, Misti has presented no evidence suggesting that she could reasonably have expected her beneficiary status to continue. *See Estate of Dobert,* 963 P.2d at 332 (finding that because divorce court awarded policy to policyholder, former spouse had no reasonable expectation of remaining the beneficiary). Thus, Misti's motion for summary judgment based on the impairment of her own contractual rights will be denied.

### b. Richard's Contractual Rights

Misti argues that regardless of whether § 854.15(3)(a) impaired her own rights, it substantially impaired Richard's contractual relationship with Allstate. It is not readily apparent, however, that Misti may raise Richard's claim. Courts have divided on the issue. One court permitted a beneficiary to raise the rights of the policyholder, finding the circumstances suitable for third-party standing. *Mearns*, 12 P.3d at 1055. Another determined that a beneficiary could not assert the policyholder's interests. *Estate of Dobert*, 963 P.2d at 332 n. 3. Still others have assessed the contractual interests of the policyholder without addressing whether the beneficiary could raise them. *Whirlpool Corp.*, 929 F.2d at 1322–23; *Parsonese*, 706 A.2d at 818–19. However, I need not resolve this issue because, even if Misti is able to assert Richard's claim, the claim fails.

■ Richard unquestionably had a contract with Allstate in which his rights were vested. Under the contract, Allstate was required to provide $500,000 to his designated beneficiary on the occasion of his death. However, Misti has not shown that § 854.15(3)(a) substantially impaired Richard's rights under the contract. The contract remains in effect and enforceable. Section 854.15(3)(a) changed the identity of the presumptive beneficiary, but did not alter either party's obligations under the contract. Richard was required to pay premiums, and Allstate is required to pay benefits. Thus, the essential elements of the bargained-for exchange remain intact. *Cf. Allied Structural Steel*, 438 U.S. at 246, 98 S.Ct. 2716 (finding a substantial impairment where law required company to pay more to employees under pension plan).

In addition, the change in the law brought about by § 854.15(3)(a) was foreseeable. Wisconsin heavily regulates the transfer of assets at death. *See* Wis. Stat. § § 851.001–881.02. Further, when Rich-

ard and Misti purchased the policies and when they divorced, Wisconsin already applied the presumption of divestment at divorce to probate assets. *See* Wis. Stat. § 853.11(3) (1991), *amended by* Wis. Stat. § 854.15 (1998). Therefore, it was at least "in the direct path of the plausible" that a shift in the presumption governing disposition of nonprobate assets could occur, especially given that such a change would be consistent with the Uniform Probate Code.

Moreover, § 854.15(3)(a) only created a default rule. It did not prevent Richard from maintaining Misti as his beneficiary. In order to enable Misti to receive the proceeds of his policy, Richard merely had to perform some small affirmative act indicating his intent. Richard could have, for example, altered the life insurance contract, executed some separate document, or even performed some informal act which Misti could use to show a court that she was still his intended beneficiary. *See* Wis. Stat. § 854.15(5). Thus, § 854.15(3)(a) did not impose the sort of "severe" restriction that has been found to be "substantial." *See Allied Structural Steel*, 438 U.S. at 245–46, 98 S.Ct. 2716 (finding substantial impairment where law immediately and without exception altered company's financial obligations). To the contrary, Richard could have easily avoided application of the law entirely. Thus, Misti has failed to demonstrate that § 854.15(3)(a) substantially impaired Richard's contractual rights.

### 2. Balancing the Severity of Impairment Against the Public Interests Served

■ However, even were I to find that § 854.15(3)(a) substantially impaired Misti's or Richard's contractual relationships, I would nevertheless uphold the statute because, when balanced against the severity of the impairment, it serves signif-

icant and legitimate public purposes. Under the sliding scale approach, the non-severe impairment and the high degree of regulation in the field both indicate that minimal scrutiny is appropriate.. And given that the state is not a party to the contract, I must defer to the legislature's reasonable assessment of public problems and its construction of the solution.

Section 854.15(3)(a) serves several public purposes. It creates uniformity between the state's treatment of probate and non-probate transfers in an effort to more closely effectuate the transferor's intent. Erlanger, *Wisconsin's New Probate Code*, 71 Wis. Lawyer at 48.[2] The reporter for the state bar committee that drafted the new law explained that "[w]ith the traditional family becoming increasingly less common, more attention must be paid to the effects on estate plans of divorce .... One troublesome occurrence is the failure of people to revise their estate plans after divorce. This usually means that probate and nonprobate assets are designated to be paid to the former spouse ...." *Id.* The drafters determined that the result under the old scheme was more likely to be contrary to the parties' intent. *Id.* Thus, the new law reverses the presumption in order to more easily effectuate the parties' intent. *Id.*

In addition, § 854.15(3)(a) also serves public interests by making Wisconsin's law consistent with that of other states. Again, the reporter for the drafting committee stated that the committee believed that "whenever possible, it is desirable that probate laws be uniform across states. Uniformity will become more important as people become even more mobile; already it is not unusual for a person to have lived in several states ...." *Id.* at 8. Retroactive application is necessary because without it,

these purposes would not be fulfilled for decades to come given that life insurance contracts are often long-term contracts.

These are legitimate purposes and the legislature's solution is reasonable. Weighing these public purposes against the minimal impairment, if any, and giving deference to the legislature's judgment, I conclude that the state's purposes are more weighty. For this reason also, § 854.15(3)(a) does not violate the Contract Clause.

## VI. CONCLUSION

For the forgoing reasons, Misti has not shown that application of Wis. Stat. § 854.15(3)(a) presumptively revoking her beneficiary interest in her ex-husband's life insurance policy violates the Contract Clauses of the federal and Wisconsin constitutions.

**THEREFORE, IT IS ORDERED** that defendant Misti Hanson's motion for summary judgment is **DENIED.**

**FURTHER, IT IS ORDERED** that the court shall hold a telephonic status conference on **Friday, May 10, 2002 at 11:00 a.m.** The court will initiate the call.

---

**2.** I look to the intent of the drafters because it is presumed to be the same as the intent of the legislature in the absence of contrary evi-

dence. *State v. Hansen*, 243 Wis.2d 328, 338, 627 N.W.2d 195 (2001). The parties point to no such contrary evidence.